## The People *vs.* Spooner.

Proof by comparison of hands, i. e., the juxtaposition of two writings in order to ascertain whether both were written by the same person, is inadmissible.

A witness who was a clerk in chancery, and who testified that he had been accustomed to examine signatures, as to their being genuine, is not entitled to give an opinion as a person skilled in detecting forgeries, whether a signature is genuine or imitated.

*It seems*, that the rule sometimes allowed to prevail, admitting *experts* to give an opinion whether a signature is genuine or imitated, is not well established upon authority, and that such testimony is incompetent. *Per* Bronson, Ch. J.

The defendant was indicted for uttering and publishing as true, a forged mortgage, purporting to be made by Michael Tuke and Polly his wife, creating a charge on the real estate of Tuke and his wife, with intent to defraud, &c. (2 *R. S.* 670, §§ 22, 39.) The defendant was tried at the Oneida oyer and terminer before Gridley, C. Judge, and two judges of the county courts, in September, 1844. After the district attorney had given evidence to prove the alleged offence, he called a witness who testified as follows: I reside in the city of Utica, and have been clerk in chancery for ten or eleven years. I have been accustomed to examine signatures as to their being genuine. I have examined the signature to the contract made by Michael Tuke, and also the signature of Michael Tuke to the mortgage in question. The district attorney then offered to prove by the witness, that from an examination of other signatures of Tuke then before the witness, admitted to be genuine, and from an examination of the alleged forged signature of Tuke, the signature of Tuke to the mortgage in question was, in the judgment of the witness, written in a forged and imitated hand. The defendant objected to this evidence; but it was admitted by the court, and the defendant excepted. The defendant having been found guilty, the bill of exceptions was brought up by certiorari pursuant to the statute.

*J. R. Lawrence & B. D. Noxon,* for the prisoner.

*T. Jenkins,* (district attorney,) for the people.

*By the Court,* BRONSON, Ch. J.   The general rule is, that a witness must have acquired a knowledge of the party's hand-writing, either by seeing him write, by corresponding with him, or in some other way, before he is qualified to speak on the subject.   An exception to the rule has sometimes been made, and persons supposed to be skilled in detecting forgeries, although not acquainted with the party's hand-writing, have been allowed to give their opinion on the question whether a particular instrument or signature was written in a genuine or imitated character.   In *The King* v. *Cator,* (4 *Esp.* 117,) a clerk in the post office, who held the place of inspector of franks, was allowed, without objection, to testify that the libels in question were written in a feigned or disguised hand.   In *Goodtitle, ex dem. Revett,* v. *Braham,* (4 *T. R.* 497,) experts, having no knowledge of the hand-writing of the party, were allowed, after objection taken, to answer the question whether the paper was written in a natural or imitated hand.   This decision was made on a trial at bar in which Lord Kenyon presided.   But in *Cary* v. *Pitt,* (*Norris' Peake's Ev., Append.* xxv,) which was tried before the same learned judge five years afterwards, he rejected such evidence as being inadmissible, saying, that although it was received in *Goodtitle* v. *Braham,* he had laid no stress upon it in his charge to the jury.   In *Kemp* v. *Mackrill,* (*Sayer,* 130,) the evidence to detect forgery was of a very peculiar character, and was received without objection.   The case has very little bearing upon the present question.   *Regina* v. *Williams,* (8 *Carr. & Payne,* 434,) also stands upon its own particular circumstances.

In *Gurney* v. *Langlands,* (5 *Barn. & Ald.* 330,) which was tried before Baron Wood, an expert was not permitted to answer the question whether he believed the hand-writing in question to be a genuine signature or an imitation; and the court of K. B. refused a new trial.   Although the judges did not ex-

The People *v.* Spooner.

pressly determine that such evidence was never admissible, yet what they said, tended to that conclusion; and what they did, was directly to the point. In *Clermont* v. *Tullidge*, (4 *Carr. & Payne*, 1,) Lord Tenterden said, it was formerly held, that persons conversant with hand-writing could be asked whether certain letters were genuine or not; but it has been since held, that that is not evidence. This point was noticed by Lord Denman in *Doe* v. *Suckermore*, (5 *Adol. & Ellis*, 703,) where he remarked, that on the question whether hand-writing, looked at by itself, is genuine or forged, the cases appear to me to have justly exploded the notion that bare inspection by the most skilful person can furnish means for forming an opinion; and *Gurney* v. *Langlands* is a correct decision, that such an opinion cannot be received from one not acquainted with the hand-writing supposed to be imitated. He added: "I do not indeed understand how such evidence could be rejected, if a witness should swear that his habits gave him the requisite skill; but I do not think that either court or jury would believe him, or place the least reliance on his opinions. Practically, therefore, this chapter may be considered as expunged from the book of evidence." It will be seen from these remarks, taken in connection with the previous cases, that the only point which can be considered as open in the English courts, if, indeed, that can be regarded as an open question, is, whether the opinion of experts, having no knowledge of the party's hand-writing, shall be received, and then be wholly disregarded by the court and jury; or whether the evidence shall be shut out altogether. If it comes to that, I am in favor of excluding the evidence. There is manifest inconsistency in receiving it, and then telling the jury, it is of no possible value. And besides, evidence should never be given to a jury, which, uncontradicted, they are not at liberty to believe. It may have an influence upon their verdict.

In Connecticut, the evidence of persons professing skill in detecting forgeries, though not acquainted with the party's hand-writing, is said to be admissible. *Lyon* v. *Lyman*, (9 *Conn. R.* 55.) And it has been received in Massachusetts,

though the court admitted that this species of evidence is " generally very slight, and often wholly immaterial." (*Moody* v. *Rowell*, 17 *Pick.* 497.) In Pennsylvania, experts, who are called to speak from an inspection of the instrument alone, are not admitted. (*Bank of Pennsylvania* v. *Haldeman*, 1 *Penn. R.* 161.) The question is noticed in the elementary books upon evidence; but without reflecting much light upon the adjudged cases. (1 *Phil. Ev.* 493; *Cowen· & Hill's Notes*, 1337; 2 *Stark. Ev. ed. of* '42, 517; *Gresley's Eq. Ev.* 190; *Roscoe's Cr. Ev.* 163; *Greenl. Ev.* 615; *Peake's Ev.* (*Norris*) 156; 2 *Russ. on Cr.* 380.) On the whole, I think the weight of authority is against receiving such evidence, and that it should be rejected. There are many things which affect the genuine hand-writing of a party, such as his age, health, habits, state of mind, position, haste, penmanship, and writing materials; and the opinion or belief of a witness, who judges solely from an inspection of the instrument alleged to be forged, rests on no solid foundation. It is impossible that he should know whether an instrument or signature is genuine or only an imitation, when he has never seen the original. At the best, he can only give us a conjectural opinion, which is much too loose and unsatisfactory to lay the foundation for a judicial decision.

I have said thus much about the testimony of experts, because the district attorney attached some importance to the fact that the witness in this case was a clerk in chancery, and said he had been accustomed to examine signatures as to their being genuine. But there was nothing either in the official employment, or the profession of the witness, which proved that he had a higher degree of skill in judging of hand-writing than such as is common to several large classes of individuals. And besides, the witness was not called to express an opinion formed from an inspection of the mortgage alone; but the offer was to prove, that from an examination of the signature to the mortgage, and of other and genuine signatures then before the witness, the signature to the mortgage was, in the judgment of the witness, a forgery. It is not pretended that the witness had any previous knowledge of the hand-writing of Tuke; and the case

comes down to the old question, whether a witness shall be allowed to give his opinion founded solely on a comparison of hands, or the juxtaposition of two writings for the purpose of ascertaining whether both were written by the same individual. Much has been said, and more might be added, on both sides of that question. But I shall not enter into the discussion of it, for the reason that it is settled in this state, as it is in England, that such evidence is not admissible. (*Jackson* v. *Phillips*, 9 *Cowen*, 94; *Wilson* v. *Kirkland*, 5 *Hill*, 182.) The verdict must therefore be set aside.

New trial granted.