[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 441 
The fact having been disclosed by the plaintiffs' evidence that the note in question was in blank, and was filled up with the amount by one of the makers when it was delivered, it was competent for the plaintiffs to show that the defendant had, before that time, delivered notes to the same maker, indorsed in blank in like manner, to be used in the business of the firm to which such maker belonged. This evidence was not competent on the question of handwriting, nor was it offered for that purpose But it was clearly competent on the question of the authority of the maker to fill up and use the paper as he did. The case does not show for what particular purpose the evidence was offered, and the objection is general. If, therefore, the evidence was competent for any purpose, the presumption is that it was offered and received for the proper object.
The evidence offered by the defendant of his bank checks was properly excluded. This offer obviously contemplated a comparison, by the jury, of the signatures to the checks with that indorsed upon the note, as one test of the genuineness of the latter. This has, I believe, never been allowed in this state. Our courts have adopted the English rule, which excludes such comparisons by the jury, as evidence to prove or disprove the handwriting of a party, and the opinions of witnesses founded thereon. (Wilson v. Kirkland, 5 Hill, 182; Jackson v.Philips, 9 Cow., 94; Olmsted v. Stewart, 13 John., 238;Jackson v. Van Dusen, 5 id., 155 Titford v. Knott, 2John. Cas., 211.) A different rule prevails in several of our sister states. The true rule, I apprehend, on this subject, is that laid down in Doe v. Newton (5 Adolph. Ellis., 514), that where different instruments are properly in evidence for other purposes, the handwriting of such instruments may be compared by the jury, and the genuineness or simulation of the handwriting in question be inferred from such comparison. But other *Page 443 
instruments or signatures cannot be introduced for that purpose.
The questions arising upon the cross-examination of the defendant's witnesses, respecting the genuineness of the handwriting indorsed upon the two notes exhibited by the plaintiffs' counsel, and the proof of the handwriting thus indorsed, have little if any relation to the question of comparison of handwritings by witnesses or by a jury. The plaintiffs' counsel did not propose or offer to submit them to the jury to inspect. His object plainly was, in case they should testify, as they did, that the handwriting on these notes was not genuine, to contradict them by other evidence and show that it was genuine, and then ask the jury to infer that they were mistaken, or had misjudged in respect to the handwriting in issue, because he had proved they were mistaken in respect to that not in issue. This was precisely what was allowed. It was in the nature of impeaching evidence, not direct, but indirect and argumentative. The fact, even if established, that the defendant indorsed the two notes thus exhibited, had no direct bearing upon the credibility of the defendant's witnesses, and only affected their credit incidentally and remotely. Facts bearing directly upon the credibility of witnesses are material to the issue, and witnesses may be cross-examined in regard to such facts, and may be contradicted, if they deny the truth, by other evidence. (Newton v. Harris, 2 Seld., 345.) Hostile feelings on the part of the witness towards the party he is called to testify against, and interest in the action or question in litigation, belong to this class.
But the evidence as to the handwriting on the two notes was wholly collateral, and in no respect material to the issue. InGriffits v. Ivery (11 Adolph. Ellis., 322), it was held that signatures, other than the one in issue, could not be shown to witnesses on cross-examination for the purpose of testing their knowledge of the defendant's handwriting *Page 444 
by their agreement or disagreement. And in Hughes v. Rogers'Executors (8 Mees. Wells., 123), where the witness had been examined in regard to the signature of an attesting witness to a paper not in evidence in the action, and had testified it was not the signature of such attesting witness, it was held that the plaintiff could not, by other witnesses, prove that such paper was signed by other attesting witness in their presence, as it tended to raise a collateral issue. The practice allowed upon the trial has, doubtless, prevailed quite extensively at the circuit, but it is obviously subject to very grave objections, and ought not to be sanctioned. The real issue was made to depend, in no inconsiderable degree, upon the collateral issue made upon the signature to other papers in no way connected with the action. The jury were, in effect, instructed that they might discredit the testimony of the defendant's witnesses, if they were perfectly convinced that the defendant had admitted the signatures indorsed upon the two notes to be genuine. It is a familiar rule of evidence that a party cannot examine witnesses upon collateral subjects, for the purpose of showing afterwards that they are mistaken. And if he does examine them on such subjects, he cannot contradict their testimony, by other witnesses, for the purpose of discrediting it. I am of opinion, therefore, that the ruling allowing the cross-examination in regard to the two notes, and also that permitting the testimony given on such cross-examination to be contradicted, and the signatures to be proved, was erroneous; and that the judgment of the supreme court should be reversed and a new trial granted, with costs to abide the event.