CORNELIUS DUBOIS, Adm'r, &c., v. ABRAHAM C. BAKER.

A promissory note, set up as a counter-claim, was alleged by the plaintiff
to be a forgery. A witness who was cashier of a bank, after testifying
that he was acquainted with the handwriting of the alleged maker, and
that the signature to the note was in his handwriting, was asked whether
the body of the note and the signature were written with the same ink.
*Held* that the question was proper; the circumstances connected with the
inception of the note, and the defendant's possession of it, being legiti-
mate subjects of investigation; and that the answer of the witness, in the
negative, laid a just foundation for subsequent inquiries tending to satisfy
the jury of the fraudulent character of the note.
*Held, also,* that other questions referring to facts apparent and obvious upon
an inspection of the note, as: whether there were erasures upon it?
whether they were made before or after the note was written? and whether
the edges of the note were cut edges, or the ordinary edges of foolscap
paper? were not objectionable as calling for *opinion.* That the answers to
them elicited *facts*, and facts material to the pending investigation, and
having a tendency to make out the plaintiff's theory respecting the note.
That as to the writing upon the erasure, or whether made before or after
the body of the note was written, if that rested in opinion, it was a proper
inquiry to make of the witness, who was a bank cashier, and was there-
fore qualified to speak as an *expert.*
*Held, further,* that questions put to the same witness, having for their object
to elicit testimony tending to show that the note was written over the sig-
nature of the maker, and after the signature was written, were proper;
and that his answer, that the note was more crowded and the words more
cramped and confined than the maker's usual writing, formed an import-
ant link in the plaintiff's theory that the note was in fact written after the
signature.
*Held, also,* that a comparison of the handwriting of the note in controversy
with other writings of the alleged maker, in evidence in the cause, was
allowable, for the purpose of ascertaining the genuineness of the note.

*Appeal from a judgment of the Supreme Court.*

THIS action was brought to recover from the defendant
the amount of two promissory notes given by him to the
plaintiff's intestate, Isaac Allen, in his life time, one dated
May 1st, 1861, payable to said Allen, or bearer, for the
sum of $5,000, one year from date, with interest; the other
dated June 25th, 1861, payable to Allen, or bearer, thirty
days from date, for the sum of $100. The amount of both

notes, and the interest thereon, was admitted to be due upon the trial.

The defendant, in his answer, admitted the making and delivery of these notes. As a defense, and by way of set-off or counter-claim, he alleged that on the 19th day of November, 1860, the said Isaac Allen, being indebted to the defendant in various sums and amounts, for various considerations, the said Allen and the defendant, on or about the 19th of November, 1860, met together and then and there adjusted all claims and demands which the defendant then had against said Isaac Allen, at the sum of $5,000; and it was then and there contracted and agreed that the said Allen was indebted to the defendant, for the consideration aforesaid, in the sum of $5,000, which sum it was promised and agreed should be and was to be paid out of the estate of said Allen, one day after the death of said Allen, and should then fall due and become payable; and thereupon the said Isaac Allen made and delivered to the defendant his promissory note or instrument in writing, of which the following is a copy:

· "5,000. One day after my death, for services rendered and value received, I promise to pay, and there shall be paid, out of my estate, to A. C. Baker, or bearer, the sum of five thousand dollars.

"Hyde Park, *November 19th*, 1860.

"Isaac Allen."

The questions litigated upon the trial had reference entirely to the validity of this note, and they were: 1. Whether the signature to the note was or was not genuine. 2. Whether, if the signature was genuine, the note was written over such signature, by the defendant, without the knowledge or consent of Allen. 3. Whether the note was or was not without consideration.

The verdict of the jury was against the validity of the note. No exceptions were taken to any portion of the charge of the judge, but exceptions were taken, by the

defendant, to the admission and rejection of evidence, which were directed to be heard in the first instance at general term. The exceptions taken were over-ruled by the general term, and judgment ordered for the plaintiff for the amount of the verdict, with costs (see 40 Barb. 556), and the defendant appealed to this court.

On the trial the plaintiff produced and read in evidence two receipts of the defendant, as follows:

"$1.00.                    HYDE PARK, *May* 1st, 1860.

"Received, of Isaac Allen, one dollar, in full for all services and demands up to date.          A. C. BAKER."

"Received, of Isaac Allen, five dollars and sixty cents, for expenses for selling a grey horse, and other services, up to date.

HYDE PARK, *August* 8th, 1861.          "A. C. BAKER."

*H. A. Nelson,* for the appellant.

*A. J. Parker,* for the respondent.

DAVIES, J. It is to be observed that the defendant claimed, in his answer, that this $5,000 note was given to him for the sum found due to him on the 19th of November, 1860, upon an account stated, between him and Allen, and which account consisted of money lent by the defendant to Allen, for amounts due by Allen to him upon promissory notes of Allen held by the defendant; for money had and received by Allen belonging to the defendant; for a part of a bond and mortgage sold and assigned by the defendant to Allen; for goods, &c., sold by the defendant to Allen; and for work and labor, counsel and advice rendered by the defendant to Allen. And that the note is payable one day after the death of the maker and without interest. Some other items of set-off were claimed in the answer, but no question arose upon them at the trial.

Isaac Allen died on the 21st of January, 1862, at Hyde Park, where he resided for many years upon a farm of his

own, the management and cultivation of which was his only business. He seems to have been a man of considerable estate, as his inventory amounted in 1860 to about the sum of $40,000. He had neither wife nor children, at the time of his decease, and no one resided with him at and for some time before his death, except a woman named Mary E. Sarles, who seemed to have had the care of him, going about with him, and transacting business for him, and was of a somewhat doubtful reputation. He was eighty years of age, when he died. His eye sight had been impaired for years, and for more than one year before he died he was perfectly blind. The defendant resided in his neighborhood; he was not a professional man, and his accustomed occupation does not distinctly appear. He was frequently at Allen's house about the time the note bears date, and his relation to the deceased then somewhat intimate and confidential, for he occasionally sold the products of Allen's farm for him, paid his taxes, attended to a law suit or so in the justices' courts, collected money for him, and assisted him in the transaction of his business. Beyond these inconsiderable services, and the two receipts of the defendant produced to show that they were regarded in that light and the compensation paid therefor of a very moderate character, the defendant offered but little proof of the allegation of his answer, in respect to the money, property and services therein referred to as the consideration of the note set up. The facts disclosed on the trial would seem clearly to show that Allen was more likely to be a lender of money to the defendant than a borrower from him. And the fact of the defendant's conceded indebtedness to Allen in May and June, 1861, as indicated by the notes in suit, and the giving of these notes, afford strong ground for the belief that Allen at this time was not indebted to the defendant. And it is also to be remarked that the defendant, upon the trial, offered no evidence to show any money lent by him to Allen, any money received by him belonging to the defendant, any

assignment or transfer of any bond and mortgage from him to Allen, any books, or account showing any entries of any items which went to make up the balance of $5,000, found due to the defendant upon the accounting; nor did he specify, or attempt to show how much was due for money, how much for property, or how much for the alleged services tendered.

Edward Burrett, a witness for the defendant, testified that in December, 1860, he had a conversation with Allen about Baker. He said Baker was a clever fellow; that he was doing business for him, or had been, and that he intended to take care of him and pay him for what he had done; that he had given him this five thousand dollar note for his services to pay him well. He said Fowler and Miss Sarles were both present, but does not know if they heard the conversation. Both these witnesses were examined by the defendant, but they do not testify to ever having heard Allen say anything about this note, or of any indebtedness of Allen to Baker. The character of Burrett was impeached on the trial more or less, and the jury may have entirely discredited his testimony. Travis, a witness for the plaintiff, testified that since Allen's death, he had heard Baker speak of this note; said that he held a note against Allen's estate for $5,000; he stated how it was drawn—one day after death. He said he drew the note and Allen signed it; that it was at Allen's house that he drew the note and Allen signed it; that they were alone, and nobody was to know it till after his death. No reason for the gift was assigned by Baker; he said Allen wanted to give him a present as he had done a great deal for him. The evidence undeniably established that the signature at the foot of the note was in the proper handwriting of Allen, and it also satisfactorily established that the body of the note was written by the defendant, and in different ink from that of the signature. The theory of the plaintiff's counsel was, that Baker had procured a slip of paper, upon which there were two signatures of Allen, and that one of them had been

erased, and that over the other this note had been written. The plaintiff proved by Dr. Edward H. Parker, a witness accustomed to the use of the microscope, that he had examined the note and the writing thereof, through that instrument, and that the word "year," in the body of the note, had been erased, and the word " day " written upon the erasure, so as to make it payable one day instead of one year after the death of the maker; and that the body of the note, which was written in blue ink, had been written after it was signed with the name of Isaac Allen, which was written with black ink, because certain parts of the blue ink passed on and overlapped the black ink. The jury found a verdict for the plaintiff, thus affirming that the note was in fact a forgery.

We have only to consider the exceptions taken by the defendant upon the trial, and which are now urged as grounds why the judgment should be reversed and a new trial ordered. John F. Hull, cashier of a bank, testified that he was well acquainted with the handwriting of Allen, and that the signature to the note was in his handwriting. He was then asked by the plaintiff's counsel, are the signature and the body of the note written with the same ink? It is to be observed here that it was subsequently proved that the body of the note was in the defendant's handwriting, and was written with blue ink, and that the signature of Allen was written with black ink, and that the body of the note was written partly over and upon the signature, thus demonstrating, if this evidence was credited by the jury, that the body of the note was written after the signature had been written. This question was objected to, and admitted and exception taken, and the witness answered: " I think it is not." The defendant had produced the note and had relied upon it as the ground for establishing a debt against the estate of the deceased. All the circumstances connected with its inception and possession by the defendant, were legitimate subjects of investigation, and the position of the plaintiff not only authorized, but demanded the

fullest enquiry into them.   The question put to the witness was therefore eminently proper, and the answer given laid a just foundation for the subsequent enquiries, which satisfied the jury of the fraudulent character of the note.   The next questions put to this witness and objected to are: 1. Does there appear to have been an erasure in this note? 2. Was the erasure made before or after the body of the note was written?   3. Are either of the edges of the note in question cut edges, or the ordinary foolscap edge?

These questions were objected to on the ground that they asked for the opinion of the witness.   It is a mistake to assume that these questions called for opinion.   The answers to them elicited facts, and facts material to the pending investigation.   Whether there were erasures upon the note; whether they were made before or after the note was written, and whether the edges of the note produced had cut edges, or the ordinary edges of foolscap paper, were all circumstances having a tendency to make out the plaintiff's theory respecting the note.   They are all facts apparent and obvious upon an inspection of the note, and it was competent and proper for the plaintiff to call the attention of the witness to them, and to establish them as evidence by his oath.   As to the writing upon the erasure, or whether made before or after the body of the note was written, if that rested in opinion, it was a proper enquiry to make of the witness, who was a bank cashier, and was therefore qualified to speak as an expert.   (Cowen & Hill's Notes, 1418, 1419; 1 Green. Ev. §440; *Moody* v. *Bornell*, 17 Pick. 490; *Stone* v. *Hubbard*, 7 Cush. 595; *Sheldon* v. *Benham*, 4 Hill, 131, n. b.; *Cooper* v. *Bockett*, 4 Moore P. C. Cases, 433.)   In this latter case it was decided that where one line of writing crosses another an expert may testify which, in his opinion, was made first.   The same remarks will apply with equal force to the question put to Harris, and objected to by the defendant.   He was also a cashier and an expert, and these questions had for their object to elicit testimony tending to show that the note

was written over the signature of Allen, and after it was written.   He was competent to say, by comparison of this with other writings of Baker, whether it was more crowded, and the words more cramped and confined than his usual writing.   The answers showed that it was so, and they formed an important link in the plaintiff's theory that the note was in fact written after the signature.   A comparison of the hand-writing of papers introduced and relevant is permitted, to ascertain the genuineness of the one in controversy, and no reason is perceived why the same thing may not be done in the present instance, for the purpose indicated.   This rule was distinctly laid down in *Doe* v. *Newton* (5 Adol. & Ellis, 574), that where different instruments are properly in evidence for other purposes, the hand-writing of such instruments may be compared by the jury, and the genuineness or simulation of the hand-writing in question be inferred from such comparison. This rule received the approval of this court in *Van Wyck* v. *McIntosh* (4 Kern. 442).   I see no objection to the admission of the claim made by Miss Sarles upon the estate of Allen, and her release and settlement thereof. She had testified, upon the defendant's examination, that her claim was settled; that it was not what Allen had offered her, and that she was not satisfied.   She was evidently under an unfriendly bias toward the plaintiff, and it seems to have been quite proper that all the facts connected with that claim and settlement should be laid before the jury, that they might judge of the cause and extent of that bias and prejudice.   It affected the defendant in no other way than as showing the influences under which the witness testified.

I see no other exceptions of the defendant calling for any further observation; and being of the opinion that they were legally overruled, I am of the opinion that the judgment appealed from should be affirmed, with costs.

DENIO, Ch. J., and WRIGHT, INGRAHAM and JOHNSON, JJ., concurred.

MULLIN, J. The verdict of the jury was rendered on conflicting evidence, and is conclusive on the questions of fact in the case.

The only questions before the court are those arising on the exceptions to the rulings of the court on the trial as to the admission or rejection of evidence. They will be most conveniently examined in the order in which they are stated in the case.

Hull, cashier of the Fallkill Bank, a witness on the part of the defendant, was asked, on cross-examination, whether the signature and body of the note were written with the same ink. The defendant's counsel objected to the evidence on the ground that it called for the opinion of the witness, and was improper. The objection was overruled, and the defendant's counsel excepted.

If there was in fact a difference in the color of the ink used in writing the body and signature of the note, it might be quite material upon the issue as to the genuineness of the note. If the note was written at the defendant's house, on the day it was signed, and the intestate had but one bottle of ink, and that was black, and the body and signature were written in inks of different colors,—it would be a fact tending to cast suspicion on the note if not to prove it a forgery. The subject matter of the inquiry being material, it only remains to inquire whether the witness was competent to testify to it. If it was a matter which was to be determined by mere inspection of the paper, the jury were as competent to pass on the question of color as the witness. But if it involved any peculiar skill to detect the difference, then the opinion of an expert was competent.

I think we may take it for granted—in the absence of any allegation to the contrary, or objection to the evidence until it was shown that the witness had skill in the detection of forgeries—that a cashier of a bank is an expert within the rule that permits experts to give opinions upon matters peculiarly within the branch of science or art to which their skill relates. A cashier is an expert in regard

to handwriting, by reason of the great amount and variety of it which comes under his observation, and because of the great care which such officers are required to exercise in order to avoid the numerous risks which banks incur in having their own notes, and those which they are in the practice of using daily, forged and counterfeited. Entering into the question of forgery, not unfrequently, is the question whether the ink, with which the note that is the subject of investigation is written or printed, is of the same color of the genuine notes, or whether the signatures and the body are of the same color or of different colors. It is also true that the color of ink is affected by lapse of time; some becoming darker and some lighter. An expert in the detection of counterfeits is able to appreciate these changes, and they may be quite obvious to him, while to the jury they may be wholly unappreciable.

I am, therefore, of opinion that it was competent to ask the witness the question put to him, and the objection was properly overruled.

The next question objected to by the defendant's counsel was, whether there appeared to be an erasnre upon the note. The objection was overruled, and the counsel excepted.

The observations already made apply with some force to the question now under consideration. But there is another which I omitted to allude to in examining the previous question and objection, which applies to both, and that is this: The party assailing a note as forged or counterfeited, has the right to have a description of it incorporated in the record, so that the court of review, which does not usually have the original paper before it, may be informed as correctly as possible in regard to its appearance. As to all matters apparent on the face of the note, a jury are informed by mere inspection; but that information can only be got into the case through witnesses called to describe its appearance. Hence a witness with the paper before him may be asked as to the condition and appearance of the paper, and such facts are not opinions. An expert, on the other

hand, while he may testify to the same matters, yet his peculiar province is to speak of matters connected with the paper, which it requires science and skill to discover.    On either ground I think the evidence was competent.

The next question objected to by the defendant's counsel was whether the erasure was made before or after the body of the note was written?    The objection was overruled.

For the reasons already suggested, I think this question competent.

The next question, whether the edges of the note were cut, or the ordinary foolscap edge, was competent for the same reason.    It was descriptive of the note, and either party had the right to have a description of it in the case.

Harris, a witness, produced on the part of the plaintiff, testified that he was cashier of the Merchants' Bank, and that he knew the defendant's handwriting.    Five papers, being notes and receipts, were then shown to him, and he said they were also the defendant's handwriting, and these papers were, as I infer from the case, put in evidence, being numbered 1, 2, 3, 4 and 5.    He was then asked to state in what respect the character of the handwriting of the $5,000 note, differed from the receipts and notes shown to him?    This question was objected to by the defendant's counsel as improperly asking for the comparison of hands and as irrelevant.

It would seem from the evidence given in answer to this and other questions that the object of it was to show that the $5,000 note was not written in the defendant's usual manner, but the letters were smaller and more crowded; the plaintiffs' thereby intending to satisfy the jury that the note was written over a signature of the intestate and was not a note signed by him, with knowledge of the character of the paper thus signed by him.    It was competent to prove this fact.    The question put was understood by the witness as calling for evidence bearing on the view of the case just suggested.    The evidence called for was not therefore immaterial.

But the question called for a comparison by the witness of the $5,000 note with the five papers put in evidence, thus assuming that these papers were fair specimens of the defendant's style and manner of writing notes and receipts. I can perceive no objection to asking the witness whether the writing in the $5,000 note was larger or smaller than Allen's usual hand; nor whether he was accustomed to crowd his letters and words, or to leave considerable space between. These are facts any one acquainted with his hand writing could testify to. But the complaint is that the witness was called on to speak not from his own knowledge, but from comparison with other writings.

It has been held that a witness cannot be permitted to testify to his opinion of hand writing from comparing that of the paper in question in the suit with that of other papers, proved to be genuine, unless the papers with which the comparison is to be made are in evidence in the cause; then the papers thus in evidence may be given to the jury, in order that they may, by comparison, determine a conflict of evidence in relation to the genuineness of the handwriting in issue. (*Van Wyck* v. *McIntosh,* 14 N. Y. 439; *Ellis* v. *The People,* 21 How. Pr. R. 356; 4 Bro. 442; 5 Ad. & E. 544.)

The comparison proposed in this case was not for any such purpose. The body of the note was concededly in the defendant's hand writing—that of the signature in the intestate's. The comparison proposed was however just as improper as if it had related to the hand writing. The question was improper. But it was not answered. The witness answers from his own knowledge of the defendant's hand writing, and not from any comparison of the $5,000 note with the notes and receipts exhibited to him. The defendant was not prejudiced by the question, and the error has not injured him.

There were three other exceptions taken to questions put to this witness, which were overruled. These questions related to whether the words in the note in question were

more or less crowded than the defendant's usual writing; whether two kinds of ink were used in writing the note— one kind in the body and another in the signature; and how the color of the ink attempted to be erased compared with the color of that in the signature.

It is impossible to say from the case whether these questions called for the opinion of the witness as an expert, or merely a description of the appearance of the note. If the former, the witness was an expert, and competent to give an opinion. If the latter, then a description of the note, in all the respects referred to in the question, was competent.

Evidence of the claim of the witness, Mary E. Sarles, against the estate of Isaac Allen, and the papers accompanying the same, was incompetent, and should have been rejected. The dealings between the witness and the intestate were wholly irrelevant to the issue between the parties then before the court. They could be used only to affect the credibility of the witness, if they were of a nature to produce that result. The only way they could be used against her for that purpose was by an examination of her in reference to such dealings. But they being irrelevant, her answers were conclusive on the plaintiff. In order to attack her reputation, otherwise than by her own oath, evidence that her character for truth and honesty is bad must be given. It was not competent to show that she had been guilty of perjury or other specific crime, for the reason that a witness is not presumed to be prepared to meet evidence of particular criminal or immoral acts, but is presumed to be at all times prepared to meet and resist attacks on his general character and conduct. (1 Cowen & Hill's Notes, 766.)

The papers relating to the claim against the estate, when received, would prove or have a tendency to prove that the witness had made a dishonest claim against it, or that she had been guilty of perjury in verifying it, or both. These facts, if facts they were, could not be proved in any

other way than by her own oral evidence, and that evidence could not be controverted.

The defendant, on the direct examination of the witness, gave no evidence that could form a basis on which to rest the admission of this evidence.

When the defendant closed the first examination of the witness, he had not alluded to her claim against the estate. The plaintiff's counsel, at the close of the cross-examination, alludes to it for the first time, by enquiring of her how much she had got out of Allen's estate. On re-direct examination, the defendant's counsel proved by her that her claim was settled, but what she got was not satisfactory to her, as it was not as much as Allen offered her. She said she went to Allen's because he came for her, and promised to do better by her than she could do for herself; and that he had given her two notes of $500 each.

On re-cross-examination the plaintiff's counsel inquired of the witness what the amount of her claim against the estate was, and she replied she did not remember; and thereupon the papers relating to it were offered and received in evidence.

This case is not within the rule laid down at the last term in the case of *Jeffards* v. *The People.* In that case the mother of the prisoner was examined on his behalf, and on her direct examination testified that she was the widow of the person for whose murder the prisoner was then on trial. The district attorney, to contradict her on this point, offered in evidence an affidavit made by her some years before the trial, in which she swore that she was then the wife of a person named by her; and he also offered a deed signed by her as the wife of the same person; and these papers, with other evidence given on the trial, proved that she could not be the widow of the deceased. This evidence was received under the objection of the prisoner's counsel, and this court held it admissible, on the ground that the evidence of her relation to the murdered man, was not

collateral to the issue, and it was therefore competent to contradict her.

The evidence of the claim, &c., in this case, contradicted nothing the witness had sworn to on either her direct or cross-examination; and it could only operate by way of impeachment, and for this purpose specific acts of misconduct are not admissible. (1 C. & H. Notes, 766.)

Evidence of the defendant's habit of carrying an inkstand at any time, was not admissible. The fact to be proved was that he had one with him on the day the note was drawn, and his habit to have one was not legal evidence that he had one at that time. It is not as convincing proof of that fact as evidence of the habit of a usurer to take usury, is that a contract made by him is usurious; and evidence of such a habit has been held to be incompetent.

The judgment should be reversed and a new trial granted, with costs to abide the event, by reason of the admission of the illegal evidence as to the claim of the witness Sarles against the estate of the intestate.

SELDEN, J., was also for reversal. HOGEBOOM, J., did not vote. Judgment affirmed.