## SUPREME COURT.

MARGARET BARRY, administratrix, agt. JOHN GALVIN and
LAWRENCE GALVIN.

A party *examines an adverse party*, under §§ 390, 391 and 392 of the Code, at his
peril; and whatever evidence is taken, whether before or at the trial, without ob-
jection, is competent, and may be used notwithstanding the restriction of § 399.

*Sixth District, Binghamton, General Term, November,* 1867.
*Before* MASON, BOARDMAN *and* BALCOM, *Justices.*

THIS was an action upon a promissory note, signed by ·
defendants, the signature of Lawrence being by a mark, and
was tried at the June circuit for Cortland county in 1866.

The defendants answered separately; John admitting the
execution of the note, and setting up a counter-claim and Law-
rence denying his execution of the note, and setting up
counter-claims. After issue was joined, the defendant, John,
was examined as a witness at the instance of the plaintiff un- ·
der § 391 of the Code, and testified among other things in an-
swer to plaintiff's inquiry that he executed the note for him-
self; that he signed his brother Lawrence's name and un-
der his mark to said note, that Lawrence had no knowledge
of such act, and had given him no authority to make such
signature, and had never sanctioned, authorized, or ratified
it. Upon the trial the plaintiff rested without having read
John's testimony so taken. The defendants then offered
John's testimony in evidence, which was rejected upon ob-
jection by plaintiff, and defendant excepted.

The defendant then offered such part thereof as was
drawn out only by plaintiff's counsel, to which plaintiff ob-
jected as incompetent under § 399 of Code.

The court admitted such portion thereof only as does not
relate to transactions had personally between John Galvin

and the intestate; to which defendant excepted. Lawrence was afterwards called as a witness, on his own behalf, to prove that he did not sign said note, or authorize John to sign it, which evidence, upon objection by the plaintiff, was rejected, and defendant excepted. The plaintiff obtained a verdict for the amount of the note and interest; proceedings thereon were stayed, and the case and exceptions were ordered heard in the first instance at the general term. Some other questions were raised upon the trial, which need not be noticed.

BALLARD & WARREN, *for defendants.*

Cited *Green* agt. *Wood* (15 *How.*, 341, 344), *Suydam* agt. *Suydam* (11 *id.*, 518), *Plato* agt. *Kelley* (16 *Abb.*, 188), *Watson* agt. *Gage* (12 *id.*, 215), *Franklin* agt. *Pinkney* (18 *id.*, 186 : 4J *Barb.*, 635) *and Code,* § 392.

A. P. SMITH, *for plaintiff.*

Cited *Dubois* agt. *Baker* (40 *Barb.*, 556, 562), *and Code,* 399.

*By the court.* BOARDMAN, J. Prior to the act of 1847 (2 *Laws of* 1847, 630), the only mode of securing an adverse party's evidence was in equity by bill for discovery.

Upon such bill being filed, and answer put in making the required discovery, the defendant was entitled to use such answer in his own behalf, if the plaintiff refused to offer it as adverse to his case. There are certain exceptions to the right of the defendant to use such answer, but subject to such exceptions the right of the defendant to use his own evidence given in answer to such bill of discovery was absolute. (3*d. Green. Ev.*, §§ 284, 289, 290; *Holt* agt. *Ten Eyck*, 2*d. J. ch.*, 89, etc.)

The act of 1847 without abolishing the bill of discovery provided for the examination of an adverse party, on commission, conditionally or upon the trial. To guard against the possible wrong which might result from the examination of an adverse party, and a refusal on a new or second trial to again examine such adverse party, because such examination was unfavorable to the party calling him, it is provided by § 5 that in case of such refusal, such adverse party may offer himself as a witness in his own behalf.

Then came the provisions of the Code, substantially as they now stand (*Code*, § 389 *to* 395), by which the action to obtain discovery was abolished, and the mode therein prescribed substituted. It will be recollected that parties could not then offer themselves as witnesses as now authorized by § 399. By the Code, then, as well as now (§ 392), such examination may be read by either party on the trial; and the commissioners, in submitting the Code to the legislature, remarked of this clause, as follows :

"When a party has called his adversary to be sworn as a witness, the testimony ought to be deemed evidence in the case, in the same manner as the deposition of any other witness, and if the examining party will not use it, the party examined should be permitted to do so." (*Rep. of Com's,* 1848, *note to ch.* 6 *of title* 12.)

It is thus apparent that the law has always designed to protect a party against the artifice of an adversary, who, if possible, would indulge these fishing expeditions with the option to use or reject the spoils as *his* interest might dictate. When parties were made competent as witnesses in their own behalf in 1857, the provision for examining an adverse party became of much less consequence, and have since been but little used. But when a party is sworn in his own behalf, he has been greatly restricted in the nature of the evidence he may give if his adversary objects. If no objection is made or *a fortiori* if the adversary examine a party

upon subjects which he would be permitted to testify to, in his own behalf, it is not error and its evidence is competent.

Now in this case the plaintiff examines the defendant John, and draws out from him a mass of evidence which John would not have been permitted to have sworn to in his own behalf, and then finding the evidence hostile to the cause of action, plaintiff refuses to use it himself, or to allow the defendant to use it. In this I think the plaintiff is wrong, and the following cases confirm the views I have taken of the question. *Gellatty, receiver, &c.*, agt. *Lowery*, (6 *Bosw.*, 113); *Conkle* agt. *Underwood*, (3 *Duer.*, 670, 679); *Plato* agt. *Kelly*, (16 *Abb.*, 188); *Watson* agt. *Gage*, (12 *id.*, 215); *Suydam* agt. *Suydam*, (11 *How.*, 518); *Green* agt. *Wood*, (15 *id.*, 388, 344); *Partin* agt. *Schackstone*, (2d *Code R.*, 66 cited in *Voorh. Code* 4th ed. note to § 390).

These authorities warrant the views I have taken, though by no means are they conclusive, since the force and effect of § 399 upon an examination taken under § 392 is not considered or even brought in question.

It follows from what has been said that a party examines an adverse party under §§ 390, 391 and 392 at his peril, and whatever evidence is taken, whether before or at the trial without objection, is competent and may be used notwithstanding the restriction of § 399. But upon the other question of allowing the defendant to testify that he did not sign the note, I think there was no error. It would allow the proof of a negative which should determine the whole issue in a manner impossible perhaps if the intestate were living.

Such a practice would violate the letter and spirit of § 399, as thoroughly as for a defendant to swear he had never received any money of the deceased, if the acts could establish by evidence that he had. (*Clark* agt. *Smith*, 46 *Barb.*, 30.) The case of *Franklin* agt. *Pinkney*, (18 *Abb.*, '86) is quite distinct. There the plaintiff was allowed to ·ove by himself that he had deposited money to the credit

of defendants intestate, such intestate not being present or knowning thereof.    It was held that this was not a personal transaction between them within § 399.   While this decision is not necessarily in conflict with my views, it seems difficult to reconcile it with the case of *Dubois, administrator* agt. *Baker*, (40 *Barb.*, 550, 552, *affd.* 30 *N. Y.*, 355) in which the defendant to relieve himself from the suspicions of wrong in presenting a note of $5,000 against the estate represented by plaintiff, the body of which note was in ink of one color, and the signature of intestate in another, offered to prove that he usually carried an inkstand with him.   It was rejected as showing a fact as a personal transaction between deceased and defendant.   But for the reason first assigned I think the verdict should be set aside and a new trial granted, costs to abide the event.