By the Court.—Curtis, J.
The rule that the opinion of a witness is inadmissible when that opinion is based on the comparison of handwriting, was long adhered .to in this State (Jackson v. Van Dusen, 5 Johns. 155 ; Jackson v. Phillips, 9 Cow. 112; Wilson v. Kirkland, 5 Hill. 182).
This rule has been so far modified as to permit a comparison of the disputed document with instruments admitted to be genuine, and properly in evidence, for other purposes (Morey v. Safe Deposit Co., 34 N. Y. Superior Court Reports, p. 154; Van Wyck v. McIntosh, 14 N. Y. 439 ; Hoyt v. Stuart, 3 Bosw. 447).
In the case of Ellis v. People (21 How. Pr., Allen, J.), commenting upon this rule in England and in this State, observes, “that the handwriting of such instru *31 ments may be compared by the jury, and the genuineness or simulation of the handwriting in question be inferred by such comparison,” adding Cl a witness, cannot, however, take the place and usurp the functions of the jury.”
In People v. Spooner (1 Den. 343), Bronson, Oh. J., after reviewing the cases, arrives at the conclusion, that the weight of authority is against permitting an expert to answer the question, whether he believed the handwriting in question to be a genuine signature or an imitation, and that such evidence should be rejected.
In Dubois v. Baker (30 N. Y. 355), it was held proper to ask questions to elicit all facts material to the investigation, as to whether there were erasures upon the note in question, as to whether they were made before or after the note was written, as to differences in the color of the ink, as to the words being unusually cramped and confined, these being .facts apparent upon inspection of the note, and competent to be established upon oath. It was also held that an expert could speak as to whether the writing upon the erasure was made before or after the body of the note was written, if that rested in opinion.
It seems to accord with the views of the courts, that witnesses may describe all the facts in respect to the condition and appearance of the paper and handwriting, and that, as to those matters which require special skill and scientific research to discover, and explain, an expert may be called upon to testify. There appears to be no disposition to restrict the placing before the jury of all of the material facts, and the opinions of experts upon those matters, which science and aft tend to elucidate; but no witness is permitted to give his opinion as to the genuineness of the writing in question, based solely upon a comparison of the documents in evidence. This is especially reserved for the jury, who must come to their conclusion upon other testimony *32 than the opinions of witnesses as* to the genuineness of the writing who have never seen the party in regard to whom, the question arises write or corresponded with, him.
In the present case, there was the direct testimony of the resident plaintiff, and who alone had charge of the plaintiff’s business in New York during the period in question, that the signatures were forgeries. This was to some extent corroborated by other evidence, and in addition there was the testimony of the expert, Mr. Payne, which it is impossible to carefully examine, without being impressed by the extent, the minuteness, and the relevancy of his illustrations, and the force of his opinions and conclusions. They seem to indicate,, that skill, and the resources of science, are destined to discover forgery, with a certainty but little short of a mathematical demonstration.
All the evidence was placed before the referee, for him to form his opinion as to the genuineness of the signatures. But the expert, in addition to this testimoney, was asked for his opinion, as to the genuineness of the checks, he having no knowledge of the handwriting of the plaintiffs except what he had obtained by comparison of handwritings for the purposes of this trial. Among other questions he was asked:
Q. “Is their any possibility, in your belief or judgment, of those three being genuine checks ?”
A. “ Not a shadow of any.”
The defendant duly objected to the question, and excepted to its allowance. The decisions heretofore referred to, are in variance with this ruling. Referring to the language used in Ellis v. People (21 How. Pr. 356), the question arises whether this does not present a clear instance, where the witness “takes the place and usurps the functions of the jury ?” Should not the referee, on this trial, have so restricted the admission of the evidence, that with all the light of the preceding *33 testimony thrown upon the question, he should have proceeded to form his own opinion, as to the genuineness of the signatures, without permitting the witness to testify as to what was his opinion as to the genuineness ? Perhaps, in addition to the many things affecting the genuine handwriting of a party, referred to by Chief Justice Bronson, in People v. Spooner (1 Ben. 343), such as age, health, habits, mental condition, position, haste, penmanship, and writing materials, and tending to render a conjectural opinion too unsatisfactory for the foundation of a judicial decision, it is the policy of the law, that the jury shall arrive at their decision, by the exercise of their own careful consideration and judgment upon the evidence unbiased, and unaffected by listening to opinions of witness, based solely upon a comparison of documents in evidence before them.
If the conclusion is correct, that the referee erred in admitting this testimony, then the question arises, whether it is of sufficient consequence to call for the granting of a new trial. The defendant’s paying teller, and also the defendant’s book-keeper, testified that they were acquainted with the hand writing of the plaintiff Frank, and that they believed the signatures to the checks in dispute to be in his hand writing. There is a conflict of evidence of such a character, that we cannot say that it would be idle to send the case back, because a new trial would present the same result. It is obvious that when questions arise in respect to the alleged simulation of signatures, so nice and so important in themselves, and so constantly affecting the interests of property and society, there should be no inconsiderate refusal to grant a new trial, where any improper evidence which is essential material and has been admitted. The defendant was entitled to the referee’s judgment upon the testimony that was competent, and it is impossible to reason or determine as to-what might have been the effect of the inproper testi *34 mony .upon the referee’s mind in arriving at his conclusion, especially as this testimony extended directly and forcibly to the very matters in issue. We cannot say that the referee would have made the same report, if this evidence had been excluded, and consequently there is manifest justice, under the circumstances, in granting a new trial (Williams v. Fitch, 18 N. Y. 551 ; McGuire v. O’Halloran, Hill & D. Supp. 86 ; Clark v. Crandall, 3 Barb. 615).
A question was raised by the defendant as to the presentation and use on the trial of photographic copies and photographic magnified copies of the documents in dispute. The administration of justice profits by the progress of science, and its history shows it to have been almost the earliest in antagonism to popular delusions and superstitions. • The revelations of the microscope are constantly resorted to,'in protection of individual and public interests. It is difficult to conceive of any reason, why in a court of justice, a different rule of evidence should exist, in respect to the magnified image, presented to the eye by the lens in the microscopist’s instrument, from that which applies to the same image, presented by the lens in the photographer’s ©amera, and permanently delineated upon sensitive paper. Either may be distorted or erroneous through imperfect instruments or manipulation, but that would be apparent or easily proved. If they are relied upon as agencies, for accurate mathematical results in mensuration and astronomy, there is no reason why they should be deemed unreliable in matters of evidence. Wherever what they disclose can aid or elucidate the just determination of legal controversies, there can be no well-founded objection to resorting to them.
It is claimed by the defendant, that a critical examination by the plaintiffs of ‘their bank-books and check-books, wotild have disclosed the fraud at any *35 time, and that they were barred by the various settlements and balancings of their bank-book, previous to this discovery; but these objections are fully answered by the views expressed in the opinions of the court, in Weisser v. Denison, 10 N. Y. 68. That decision is so fully recognized, as establishing in the public mind the basis upon which transactions between the dealer and the banker, in respect to deposits, are conducted, that it would be unwise to seek to give effect to the delicate and subtle distinctions sought to be drawn by the defendant’ s counsel on the argument.
These considerations dispose of the questions discussed upon the hearing, and if they are well founded, the judgment appealed from should be reversed, with the usual direction in regard to the order of reference, and a new trial granted, with costs to abide the event.