CHARLES W. MILES, APPELLANT, v. FRANCIS A. LOOMIS, EXECUTOR, AND SARAH J. MILES, AS EXECUTRIX OF JAMES M. MILES, DECEASED, RESPONDENTS.

*Forgery — experts — opinion of, as to signature being simulated — comparison of handwritings.*

Where, in an action upon a promissory note, the defense of forgery is interposed, experts, as to handwriting, may be permitted to give their opinion from a comparison of the disputed signature with other genuine writings in evidence in the case, and to state, from an examination of the genuine writings and the disputed signature, whether the latter appears to be simulated.

APPEAL from a judgment in favor of the defendants entered upon the report of a referee.

The plaintiff brought his action on a promissory note of $2,300, claimed by plaintiff to have been made by the deceased, James M. Miles.

The note was put in evidence by plaintiff, and the defendants produced and put in evidence a note, made by the plaintiff to the defendant bearing the same date as the note sued upon, the body of which was proved to be the genuine handwriting of James M. Miles, deceased; and also the last will and testament of said James M. Miles.

Witnesses were called and sworn on both sides, who had more or less acquaintance with the handwriting of James M. Miles, and testified as to their opinion of the genuineness of the signature to said note.

On the trial the defendants called and had sworn Truesdell, Barnes and Cowie, as experts on the question of the genuineness of the said signature, and before each of them were placed the note in suit, the note put in evidence by defendants aforesaid, the body of which is in the handwriting of James M. Miles, deceased, and the said will and testament of James M. Miles; and each of said experts were told to look at the signature of the note in suit, and then to examine the body of the said note in the handwriting of James M. Miles, and the signature to the said will; and then, assuming the body of said note and the signature to said will to be the genuine handwriting of said James M. Miles, to give their opinion as to the genuineness of the signature to the note in suit.

The question was duly objected to and the objection overruled, and each witness answered in substance that, in his opinion, it was a forged signature.

To the ruling of the referee the plaintiff's counsel excepted.

One of said experts was asked whether, in his opinion, the signature to the note in suit was a simulated signature; and the others, whether it was a simulated signature or an effort to imitate the handwriting of some other person, and under the objection of plaintiff's counsel were allowed to answer that it was, in their opinion, a simulated signature or an attempt at imitation; and plaintiff's counsel duly excepted to the ruling of said referee and the admission of said evidence.

*W. P. Goodelle* and *Frank Hiscock*, for the appellant. The referee erred in allowing a comparison of handwriting; the opinion of the witnesses was wholly upon such comparison, they having no previous knowledge of the handwriting of James M. Miles. (*Ellis* v. *People*, 21 How., 356; *People* v. *Spooner*, 1 Den., 343, and authorities there cited; *Phœnix Fire Ins. Co.* v. *Philip*, 13 Wend., 81; *Boyle* v. *Coleman*, 13 Barb., 42.) The admission of the testimony was usurping the province of the court or jury, to which alone it was competent to submit the signatures for comparison, if they were properly in evidence. (See cases above cited; also, *Ellis* v. *People*, 21 How., 356; *Dubois* v. *Baker*, 30 N. Y., 355; *Van Wyck* v. *McIntosh*, 14 id., 439; *Johnson* v. *Hicks*, 1 Lans., 150; *Randolph* v. *Loughlin*, 48 N. Y., 456; *Perry* v. *Newton*, 5 A. & E., 544.) As

to the opinion of the experts that the signature to the note in suit is a simulated signature, or was an effort to imitate the handwriting of some other person, we submit that the court erred. (*Johnson* v. *Hicks*, 1 Lans., 150; *People* v. *Spooner*, 1 Den., 343; *Kowing* v. *Manley*, 49 N. Y., 192.)

*Wm. C. Ruger*, for the respondents.

TALCOTT, J.:

This is an appeal from a judgment for the defendant entered on the report of a referee. The action is upon a promissory note, claimed to have been made and delivered by the testator to the plaintiff, and payable at the death of the testator. The plaintiff claims that the note was, in fact, made by the testator that it might be used as an offset to a note, which he at the same time executed to the testator, and at his earnest solicitation, for an amount which he did not justly owe, but which the testator desired to get from the plaintiff, in order to satisfy his wife and her father, but which he, the testator, did not intend should be paid by the plaintiff, but which note had, after the death of the testator, been transferred for a valuable consideration before maturity, so that the plaintiff was liable thereon to a *bona fide* holder. The defense was, forgery of the note in suit.

The referee has found that the note is a forgery, and the only questions presented arises upon the admission of the testimony of certain witnesses called as experts to establish the forgery.

The note given by the plaintiff to James M. Miles, the deceased, was given in evidence on the trial without objection, and it was properly in evidence in the case, because it was set up as a counter-claim, and because being dated on the same day as the note in suit, and for nearly the same amount, it was improbable without explanation, at all events, that the note in suit was made by the testator when the note admitted to be genuine was made by the plaintiff to the testator on the same day. The will of the testator was also put in evidence by the defendants, for what particular purpose we cannot see from the case, since it does not appear that any question arose on any provision of the will which was alleged in the complaint and admitted in the answer. At all events, it was received

in evidence without objection, and as the case does not contain the evidence, we must presume the will to have been pertinent for some legitimate purpose, aside from a mere comparison of handwriting. These two papers were afterwards used and referred to by the witnesses who testified as experts in reference to the signature to the note in suit.

The papers being thus in evidence in this case, presumably for some legitimate purpose, they might undoubtedly be used by the referee, examined, scrutinized, compared and remarked upon by counsel as bearing on the question whether the note in suit was signed by the testator, but the question is, whether witnesses could testify as experts, from a comparison of the several signatures? On this subject it must be admitted that the reported decisions in this State do not show the law to be in a very satisfactory and settled condition.

In 1823, the late Chancellor WALWORTH, then being a Circuit judge, held, at the Saratoga Oyer and Terminer, on the trial of an indictment for forgery, that the testimony of experts from a comparison of hands, was admissible. (*People* v. *Hewit*, 2 Parker, 20.) But, in 1845, in *The People* v. *Spooner* (1 Denio, 343), the Supreme Court held it to be well settled that such evidence is not admissible. In the *Phenix Fire Insurance Company* v. *Philip* (13 Wend., 81), SAVAGE, C. J., says: "Witnesses skilled in handwriting have been received to prove whether, in their opinion, certain instruments were written in a natural or imitated character, and, of course, whether they were genuine or forged. This species of evidence differs very little from comparison of handwriting, which is inadmissible. The comparison of hands which is inadmissible, is that arising from the juxtaposition of two writings in order to ascertain whether both were written by the same person, and this is not admitted." The thing in that case sought to be established was whether certain accounts of stock, all written by the plaintiff, but purporting to have been written in different years, were, in fact, written at the same time, and such evidence was held to be inadmissible, the court saying: "The opinion of the witnesses were worth no more than the individual opinions of the jurors themselves."

In *Ellis* v. *The People* (21 How. Pr., 356), Mr. Justice ALLEN, delivering the opinion of the New York General Term, held, as we

understand it, that the testimony of an expert on this subject is incompetent, saying a witness cannot take the place and usurp the functions of the jury.

In *Van Wyck* v. *McIntosh* (14 N. Y., 439), where notes were offered in evidence, solely for the purpose of a comparison, it was held that " our courts have adopted the English rule, which excludes such comparisons by the jury as evidence to prove or disprove the handwriting of a party, and the opinions of witnesses founded thereon." (See opinions of F. A. JOHNSON and A. S. JOHNSON, JJ., in case cited.)

In *Dubois* v. *Baker* (30 N. Y., 355), the majority of the court held that " a comparison of hands of papers introduced and relevant, is permitted." The question arose, in this case, on the admissibility of the testimony of witnesses examined as experts. In the majority opinion, delivered by DAVIS, J., he says: "As to the writing upon the erasure, or whether made before or after the body of the note was written, if that rested in opinion, it was a proper inquiry to make of the witness, who was a bank cashier, and therefore qualified to speak as an expert." And he refers to the case of *Doe* v. *Newton* (5 Adol. & Ellis, 514) as authority for the rule that where instruments are properly in evidence for other purposes, the handwriting of such instruments may be compared by the jury, and the genuineness or simulation of the handwriting in question be inferred from such comparison, and says that rule received the approval of the Court of Appeals, in *Van Wyck* v. *McIntosh* (*supra*).

MULLIN, J., in the same case, who delivered the minority opinion for reversing the judgment on another point, substantially agrees with the majority opinion as to the admissibility of the testimony of the expert witnesses, and says: "It has been held that a witness cannot be permitted to speak of his opinion of handwriting, from comparing that of papers in question in the suit with other papers proved to be genuine, unless the papers with which the comparison is to be made are in evidence in the cause; then the papers thus in evidence may be given to the jury that they may, by comparison, determine a conflict of evidence in relation to the genuineness of the handwriting in issue."

So it would seem that both the majority and minority opinions in *Dubois* v. *Baker* concur in holding that where a jury may compare

other signatures which are legitimately in evidence in the cause for other purposes, with the disputed signature, for the purpose of inferring by means of such comparison the genuineness of the latter, experts may also be called to give their opinions from the same comparison. In *Randolph* v. *Loughlin* (48 N. Y., 456) it was held only that notes not in evidence cannot be received for the mere purpose of comparison.

Greenleaf lays down the rule in accordance, as we think, with that to be derived from the case of *Dubois* v. *Baker:* "When other writings, admitted to be genuine, are already in the case, here the comparison may be made by the jury, *with or without* the aid of experts." (1 Greenlf. Ev., § 578.)

The witnesses, whose testimony in this case was objected to, were experts, although it does not appear whether they had any other acquaintance with the handwriting of the testator than by comparing it with the other writings which had been introduced on the trial. Testimony to handwriting is generally a matter of comparison. The witness compares the signature presented to him with other writing of the party alleged to have written the signature which he has seen him write, or has received under such circumstances as that it is presumed to have been genuine. The comparison is made in the mind of the witness, from the recollection he has of the other writing, and it is doubtful whether it can be more satisfactory than the opinion of a witness whose business has led him to a careful scrutiny of handwriting, formed from the mere juxtaposition of the signature in issue, with others of the same person conceded to be genuine. These witnesses were also asked whether the signature to the note in suit appeared to be simulated, and an attempted imitation of the writings conceded to be genuine. In *Kowing* v. *Manly* (49 N. Y., 192) it was held that it was not competent, in a civil case, to offer evidence that the signature in question did not appear to be simulated, for the purpose of establishing its genuineness, but the case, we think, impliedly admits, that in order to prove that the signature is not genuine, it may be shown that it appears to be simulated. We think, then, that the weight of authority, and the tendency of modern decisions is to establish the rule, that experts may be examined to give their opinion from a comparison of the disputed signature, with other genuine writings in evidence in the cause, and to state, from an

examination of the genuine writings and the disputed signature, whether the latter appears to be simulated. Of course, all these signatures are open to the examination of the referee or the jury, and they are not concluded by the opinions of the experts, but may hear those opinions on the subject, giving them such weight as, in view of all the circumstances, they may deem them entitled to. We think, therefore, no error was committed by the learned referee in this case, in the admission of the testimony objected to.

The judgment is affirmed.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment affirmed.