KATE E. HILSLEY, Respondent, v. GEORGE E. PALMER AND ELIJAH ROE, as Executors, etc., of MATTHEW LAMPSON, Deceased, Appellants.

*Evidence — expert testimony as to the genuineness of a signature — examination of other signatures by the witness — when his answers are conclusive upon the party putting the question — 1880, chap. 36.*

In this action, brought upon a promissory note alleged to have been made by the defendants' testator, the defense was that the signature of the testator was a forgery. Upon the cross-examination of one O'Neil, called by the defendants as an expert, he was shown thirty-three signatures and asked which of them were the genuine signatures of the testator and which were forgeries. Against the defendants' objection and exception the witness was allowed to pick out certain of the signatures as genuine, and to testify that he could not say as to the others, but thought that they were genuine. Thereafter a witness, having been recalled by the plaintiff and shown the said signatures, was allowed, against the defendants' objection and exception, to swear that some of the signatures pronounced by O'Neil to be genuine were written by him, the witness.

*Held,* that the court erred in receiving this evidence.

That if by any possibility O'Neil could have been legally permitted to answer the questions put to him by the plaintiff, his answers were conclusive upon her and she could not thereafter call witnesses to contradict him on that collateral and immaterial issue.

Chapter 36 of 1880 authorizing genuine signatures to be put in evidence in certain cases has no application to this case.

APPEAL from a judgment in favor of the plaintiff, entered upon the confirmation, by an order of the Special Term, of the report of a referee appointed to pass upon a claim against the estate of the defendants' testator, the validity of which was disputed.

*Krum & Grant*, for the appellants.

*S. L. & F. M. Mayhem*, for the respondent.

BOARDMAN, J :

The issue between these parties was the genuineness of a $10,000 note alleged by the plaintiff to have been given her for a consideration by defendants' testator. The defendants claim that the signature of their testator to said instrument was forged. This issue was tried before a referee appointed by the surrogate who found the signature genuine. Upon his report judgment was entered for the

plaintiff for the amount of the note and interest. The defendants appeal from such judgment.

An examination of the case satisfies us that the learned referee fell into error in the admission of certain evidence, which will make a new trial necessary. The weight or sufficiency of the evidence will not therefore be considered or decided. The case was closely contested upon the facts and many witnesses examined touching the signature to the note. Among others one O'Neil was called by the defendant and examined as an expert. On his cross-examination by plaintiff, he is shown thirty-three signatures numbered from one to thirty-three, in a book, and asked to say which of them is Sampson's (testator's) genuine signature. and which is counterfeit, if any. Defendants object to such evidence as incompetent and immaterial; that the evidence is collateral and not proper as a basis of future contradiction, etc. The objection is overruled and witness designates certain signatures as genuine and can't say as to others though he thinks they are not.

Afterwards James O. Williams, a witness for the plaintiff, was recalled and shown the same thirty-three signatures about which O'Neil had testified. Williams then swore that some of the signatures pronounced genuine by O'Neil were written by him, Williams. To this evidence the defendants objected that such evidence was incompetent and immaterial to contradict O'Neil upon a collaterial issue, and plaintiff is bound by O'Neil's answer; that it did not contradict O'Neil, who did not claim to be able to pick out the real from the false signatures; that the signatures are not in evidence. The objection was overruled and exceptions were duly taken.

These exceptions seem to be well taken. It was not material to the issue to show whether any of those thirty-three signatures were genuine or false. The proof was not made to introduce them in evidence, because plaintiff had already exhausted her evidence on that subject. No such purpose was claimed. It is plain the signatures were prepared for the sole purpose of testing the skill of witnesses. O'Neil's attention was called to them in the belief that he would not be able to pick out the genuine from the false. He expressed his opinion. The evidence of Williams did not contradict him. It showed his opinion was in some respects inaccurate. But how was it material whether these thirty-three signatures were genu-

ine or not? The issue was as to the signature to the note. Whether O'Neil was right or wrong as to the thirty-three signatures it did not aid in determining the real issue. It was a collateral issue and if by possibility O'Neil could have been legally permitted or required to answer the question, his answer was conclusive upon the plaintiff. She could not afterwards call witnesses to contradict him on that collateral and immaterial issue. The case of *Van Wyck* v. *McIntosh* (14 N. Y., 439) is directly in point. (*Bank* v. *Mudgett*, 44 id., 514; 1 Green. Ev., § 580; 2 Tay. on Ev., §§ 1434, 1435, 1438, 1439; *Tennant* v. *Hamilton*, 7 Clark & Fin., 122; *Spenceley* v. *De Willott*, 7 East, 108; 1 Cow. & Hill's Notes, 727.)

Such was the undoubted rule before the passage of the act of 1880, chapter 36. That act does not affect the principle already stated or change the rule as laid down in the cases cited. By the act of 1880, genuine signatures may be put in evidence for the purpose of comparison with the disputed signature. The thirty-three signatures were not in evidence nor offered in evidence. They were not all genuine. They were not to be compared with the original disputed signature. No such purpose as is provided for by that act was contemplated by the plaintiff when this evidence was called out. It was evidently done for the sole purpose or contradiction and for that purpose it was improper.

As the case was very sharply fought, and the evidence consisted chiefly of opinions and circumstances and somewhat evenly balanced, a slight error might turn the scales. If the evidence excepted to was proper it went far to impair the value of O'Neil's opinions and may have led the learned referee to reject his evidence. But rejecting such evidence, O'Neil's testimony would be entitled to so much consideration and respect as may be due to experts. We cannot say how much or how little that may be. It is enough that such illegal evidence may have influenced the mind and judgment of the referee in favor of the plaintiff as it was well calculated to do. The error cannot be overlooked.

The judgment must be reversed, the referee discharged and a new trial granted, costs to abide the event.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

So ordered.