# Case No. 15,250.

## UNITED STATES v. GRAVES et al.

### [2 Brock. 379.] [1]

Circuit Court, Virginia.[2]　May Term, 1828.

REVENUE COLLECTOR'S BOND—STATUTORY LIEN—SURETIES—PERSONAL ESTATE—FORTHCOMING BOND.

1. The act of congress respecting delinquent collectors and their sureties, created a lien on the land of the parties to the official bond; but the lien cannot be enforced until all the personal estate is exhausted, and on a joint judgment obtained against all the parties to the bond, the personal estate of all, liable to the execution must be exhausted, before the land of any one of them can be reached; in other words, the land of one surety, who has no personal estate, cannot be subjected to the payment of any part of the judgment, while there is personal estate in the hands of another surety, who has paid his aliquot part of the debt.

2. The process act of the United States, gives the same remedy to the United States, against the lands of delinquent collectors, that the state of Virginia gives against the lands of those against whom she has obtained a judgment.

3. A forthcoming bond which is forfeited, is a satisfaction of the judgment on which the execution issued; and no further proceedings can be founded on that judgment. The forthcoming bond is substituted for the original judgment, and the recourse of the plaintiff is against the parties to that bond. But, quaere—Does the giving such bond operate a discharge of the debt, or does it merely arrest further proceedings upon the original judgment, until the forthcoming bond shall be found to be unproductive?

1 [Reported by John W. Brockenbrough, Esq.]
2 [District not given.]

4. As to the equitable relations between sureties and their principal, and sureties and sureties, see the following opinion:

At law.

MARSHALL, Circuit Justice. In the year 1813, Thomas B. Ellis was appointed collector of the internal taxes of one of the districts of Virginia; and gave bond for the performance of his duty with Charles H. Graves, James Wilson, Nathaniel Cocke, and Bartholomew D. Henley, as his sureties. Having failed to account for the moneys he had collected, his bond was put in suit; and, on the 5th of April, 1820, a judgment was rendered against Graves, Wilson, and Cocke, the surviving obligors. On a settlement at the treasury, it appears that the actual deficiency is $7000. The bill alleges that Thomas B. Ellis is dead, insolvent; that the sureties, except the defendant, Graves, have paid, or are ready to pay their aliquot parts of the debt, and that Graves was, when the suit was instituted, seised of two tracts of land, which he has since conveyed away to satisfy creditors. This suit is brought against the said Graves, and the other obligors, or their representatives, and against the purchaser of the land, said to have been in his possession, for the purpose of subjecting it to the payment of his portion of the debt. The answer of Graves insists that Ellis left a considerable estate, both real and personal; that an execution was issued on the judgment which was levied on six negroes, the property of some of the defendants, and a forthcoming bond given, which was forfeited: that at the rendition of the judgment, the defendant was in possession of personal estate sufficient to satisfy it. It insists on the want of due diligence on the part of the United States, and resists the lien claimed for them. The purchasers insist that the lien, if any was created by the act of congress, does not bind the land in their hands; that the lien is conditional, dependent on a deficiency of personal estate; that the personal estate of those against whom the judgment was rendered, was, at the time, and is now, sufficient to satisfy it; and the plaintiffs have a plain remedy at law. They deny the insolvency of Graves, and also that of Ellis. They deny also the continuance of the lien created by the judgment; but the plaintiffs do not rely on this. The executor of Ellis denies that his estate is sufficient to satisfy the judgment. In June, 1826, this court directed an account of the property in possession of the defendant Graves, or in the possession of others in trust for his use. The report dated 15th of May, 1827, shows that Graves has taken the oath of an insolvent debtor; but that some real and some inconsiderable articles of personal property were contained in his schedule, and that deeds have been made, of other real estate, which was in his pos-

session, when the bill was filed. If this real estate is chargeable with that part of the debt which ought to be paid by Graves, some farther account must be taken. If it is not so chargeable, the account would be useless. It is therefore proper, now to examine the question of lien which has been made by the defendants who are purchasers.

The act of congress (4 Bior. & D. Laws, p. 627, § 6 [3 Stat. 83]) declares "that the amount of all debts due to the United States, by any collector of internal duties &c." [3] The first part of this section, unquestionably charges the lands and real estate of the collector and his sureties, with the amount of all debts due to the United States from the institution of the suit. The effect of this lien is, I think, as little to be doubted, as its existence. It does not, indeed, pass the estate, but it binds the land as effectually as a mortgage can bind it. A mortgage binds by force of law, and a lien, created by statute, has all the force that the law can give it. It commences with the suit, and as its object is to secure the land as a fund from which the debt may be satisfied, it terminates only when that object is accomplished. Had the enactment terminated with that part which creates the lien, the plaintiff's case would be relieved from the most serious difficulty which opposes the relief claimed by the bill. But the section proceeds with a provision for the execution of the lien. That provision is, that the land may be sold in the manner prescribed by the act in a particular state of things, which is also prescribed. Although, then, the creation and the continuance of the lien be certain, the inquiry remains, whether that state of things exists in which it may be enforced?

In pursuing this inquiry, it may be useful to consider the subject on which the law was to operate. In every state of the Union, I believe, except Virginia, lands may be taken in execution for the payment of debts. Con-

sequently, in every state except this, the forms of executions are such, that lands may be seized to satisfy them; and these forms are adopted for the courts of the United States. These laws, however, varied in the different states. I am not acquainted with the different regulations which prevailed, but believe, that in some instances, the land could not be sold till the personal estate was exhausted; in some, perhaps, it might be seized immediately; and, in some, it might at a valuation; but in all, I believe, an alienation, pending the suit, would convey a secure title to the purchaser. This section, then, has two objects. First, to overreach any intermediate conveyance between the issuing of the original writ, and the service of the execution; the second, to prescribe an uniform course of proceeding against lands, under all judgments obtained by the United States, against delinquent collectors and their sureties. In a state where land may be taken in execution, and may, in pursuance of the act of congress, be sold at public auction, no reason can be assigned for coming into a court of equity, unless there be some fraudulent alienation before the original writ was issued. If the land may be taken in execution and sold under the judgment, there is no ground for the interposition of equity.

Under what circumstances may this execution and sale take place? The law answers, "when there is a want of goods and chattels, or other personal effects of such collector, or his sureties, to satisfy any judgment which shall, or may be, recovered against them, respectively." This want of goods and chattels, is a state of things that must exist, before the land can be sold to satisfy the judgment. Congress intended that the personal estate should be first exhausted. If the suit had been instituted against only one of these obligors, it will not be contended that his land might be sold, while personal estate remained to satisfy the judgment. An officer who should sell the land in the first instance, would violate the law, would probably be restrained by the court, and would certainly expose himself to the action of the injured party. It may well be doubted, whether the title he could make would be valid.

Is any distinction to be taken between a judgment against one obligor, and a judgment against all of them? I can perceive no reason for such a distinction. The judgment is one entire thing which affects all equally; the execution also, is entire, and affects, equally, the property of all. If it possess an intrinsic quality, which postpones its capacity to reach land until the personal estate liable to it shall be exhausted, that intrinsic quality adheres to it, and applies to its operation, when emanating on a judgment against several, as completely as when emanating on a judgment against one. On a joint judgment, then, the personal estate of all liable to the execution, must be exhausted before land can be sold, unless there be something in the language of the act of congress which shall re-

<hr/>

[3] "That the amount of all debts due to the United States, by any collector of internal duties, whether secured by bond or otherwise, shall, and hereby is declared to be, a lien upon the lands and real estate of such collector, and of his sureties, if he shall have given bond, from the time when a suit shall be instituted for recovering the same; and for want of goods and chattels, or other personal effects, of such collector or his sureties, to satisfy any judgment which shall or may be recovered against them, respectively, such lands and real estates may be sold at public auction, after being advertised for at least three weeks, in not less than three public places within the collection district, and in one newspaper printed in the county, if any there be, at least six weeks prior to the time of sale; and for all lands or real estate, sold in pursuance of the authority aforesaid, the conveyance of the marshals, or their deputies, executed in due form of law, shall give a valid title against all persons claiming under such collector, or his sureties, respectively." 2 Story's Laws, p. 1381. c. 55 [3 Stat. 83]; Act Aug. 2nd, 1813, repealed; Act 1815, c. 237.

quire a different construction. I find nothing in that act which varies the general principle; nothing which may enable a court or its officer, for the sake of equality, to seize the lands of one of the debtors, while personal estate remains, which is liable to the execution, although that personal estate may belong to another, who has paid his aliquot part of the debt. If this construction be correct, then the United States do not, under this act of congress, possess the power to sell at discretion, for the purpose of equality, or for any purpose, the land of one of the parties against whom judgment has been obtained, while the execution may be satisfied by the personal property of others. A court of equity cannot give this right, in states where the judgment is to be satisfied out of land, by legal process. Can a different rule exist in the state of Virginia?

The act of 1789 (1 Story's Laws, p. 67 [1 Stat. 93]), rendered perpetual by the act of 1792 (1 Story's Laws, p. 257 [1 Stat. 275]), adopts the forms of writs and executions then in force, in the states respectively. Although, in Virginia, lands could not be taken in execution by creditors, generally, they were liable to executions issued on certain judgments rendered in favour of the commonwealth. When, then, the act of congress declared that the lands of their debtors might be sold, in certain cases, to satisfy the debt due to the United States, the process act adopted the form of execution used by the commonwealth in the state of Virginia. Could this be doubted, the process act provides for the case of subjecting the forms of writs and executions, "to such alterations and additions as the said courts" (of the United States,) "respectively, shall, in their discretion deem expedient." Process Act of 1792, § 2 (1 Story's Laws, p. 258 [1 Stat. 275]). There is, then, I think, the same remedy at law against the lands of delinquent collectors and their sureties, in Virginia, as in other states. Were this otherwise, were it understood that the process act did not adopt, for the United States, the execution against lands which might be issued by the commonwealth, on judgments in favour of itself, and that the omission of the court to make the necessary alteration in, and addition to, the form of the execution, rendered an application to equity necessary, still equity could interpose so far only, as to remedy the omission, and carry the intention of congress into execution, in Virginia, as in the other states: that is, to subject the lands of those, against whom judgment has been rendered, where there is a deficiency of personal estate. It is not alleged that such deficiency exists in this case, and, therefore, no foundation is laid for proceeding at law against the lands.

Has any thing occurred which authorizes a court of equity to interpose, and subject lands, which were not liable at law, to the payment of this debt? The execution which issued on the original judgment, was levied,

and a forthcoming bond given, which was forfeited. The bond was returned to court, and execution was awarded on it. It is contended on the part of Graves, and those who claim title to lands, held by him when the original suit was instituted on the part of the United States, that these proceedings discharge the lien created by issuing the original writ. The state courts, by whose decisions on this point, this court is bound, have, undoubtedly, determined that a forthcoming bond, when forfeited, is a satisfaction of the judgment on which the execution issued,[4] and that no farther proceedings can be founded on that payment. The forthcoming bond is substituted for the judgment, and the recourse of the plaintiff is against the parties to that bond. The forthcoming bond being considered as a satisfaction of the judgment, Graves, and those who claim under him, contend that it is necessarily a discharge of the original debt, and, consequently, of the lien created by the act of congress. As the opinion has been already expressed, that this lien cannot be enforced against the real estate, while personal estate remains, and as the personal estate cannot be considered as exhausted until the forthcoming bond shall be shown to be unproductive, it is not necessary at present to decide this very doubtful question. I certainly think it a doubtful question; for the bond, though a technical, is not actual satisfaction; and, though it arrests all further proceedings on the judgment, I am not entirely convinced that it extinguishes the original claim.[5] Be this as it may, the fact that it prevents a sale of the land under the judgment, cannot empower a court of equity to enforce the lien, until the impossibility of obtaining satisfaction from the bond, shall be shown. Whether equity can, even in that state of things, afford the aid which is requested, is a point on which I have not formed an opinion.[6]

The relief prayed in the bill is supported on a distinct ground from that which has

---

[4] But a forthcoming bond is no satisfaction of a judgment, until the forfeiture. Cabell, J., in Cooke v. Piles, 2 Munf. 153; Roane, J., in Lusk v. Ramsay, 3 Munf. 454.

[5] And, therefore, where a judgment was rendered against a surety alone, on a bond executed by principal and surety, and the surety gave a forthcoming bond which was forfeited, the forfeiture of the bond, the court said, did not discharge the principal in the original bond from his liability to the claim of the obligee; and the surety could not, on the ground of the forfeiture, maintain his motion against the principal obligor. He was entitled to a judgment for the amount paid by him as surety, and a forfeited forthcoming bond was certainly not a payment. Randolph's Adm'x v. Randolph, 3 Rand. [Va.] 490.

[6] As to the effect of a forthcoming bond upon the original judgment see the cases cited above, and Taylor v. Dundass, 1 Wash. [Va.] 92; Downman v. Chinn, 2 Wash. [Va.] 189; Jett v. Walker, 1 Rand. [Va.] 211; and 1 Rob. Prac. 597.

been considered. It has been contended, that sureties who pay the debt, may assert the claim of the United States upon the principal, and that the equitable right which sureties have against each other for contribution, may induce the court to decree, in this suit, against those who will be ultimately bound to the parties, who shall pay more than their just proportion of the debt. Though both these propositions are true, I do not think that either of them can avail the plaintiffs, or those for whose benefit the principle is advanced. The United States can impart to a surety, no other right than the United States could assert for themselves. Having no right to enforce the lien in the present state of things, they cannot impart this right to sureties. The same consideration restrains this court from decreeing, in this cause, on the principle of contribution. The right to contribute grows out of the equitable relations of the parties with each other. If a claim exists against several defendants, and, from any circumstance, one ought to pay more than another, or if one defendant would have a right to proceed against another for any sum he may be decreed to pay, the court will adjust the equity between the parties, and decree in the first instance, according to their ultimate liabilities. But in this case the plaintiff has a right to a decree against any of the parties brought before the court. If the decree against one person gives him a right upon another, against whom the plaintiff could not sustain a suit in the first instance, then I think the court ought not to settle this controversy between the defendants, unless it could entertain a suit between the parties, brought for the purpose of settling their equities. If the decree which the plaintiff asks against the lands which form the subject of the present controversy, cannot be made for the benefit of the United States, then I think it cannot be made in the name of the United States for the benefit of a surety.[7] If the judgment against such surety gives him claims upon others, those claims must be asserted in a court which has jurisdiction of them. I do not think that the bill, so far as it asserts the right of the United States, to enforce their lien upon the lands of any of the defendants, can be sustained at present.

The counsel for the United States, having admitted that the estate of Ellis had been exhausted by process in a distinct suit, and

that the debt might be satisfied from the forthcoming bond, it is ordered that the bill be dismissed without prejudice.

---

[7] In Hubbard v. Goodwin, and Kennedy v. Same, 3 Leigh, 522, decided in 1832, Tucker, P., said, that the practice of decreeing between co-defendants had never been extended to any case in which the plaintiff was not entitled to a decree against either or both of the defendants; and the practice should not be extended farther. See, also, Morris v. Terrell, 2 Rand. [Va.] 6; Templeman v. Fauntleroy, 3 Rand. [Va.] 434, 441–443, and authorities there cited; and Toole v. Stephen, 4 Leigh, 581.

