CHARLES W. MILES, Appellant, *v.* FRANCIS A. LOOMIS et al., Executors, etc., Respondents.

Where the genuineness of a signature is in question in an action, experts in handwriting who have no other knowledge of the handwriting of the person whose signature the one in question purports to be, than that derived by a comparison in court of such signature with other signatures of the person to instruments proved and properly in evidence, are competent as witnesses to give their opinion, derived from such comparison, as to the genuineness of the disputed signature, and as to whether it appears a natural or simulated hand.

Where the instruments, the signatures to which are thus compared, were for aught that appears in the case offered in evidence for other purposes than comparison, and were received without objection, it cannot be objected upon appeal that they were immaterial for any other purpose and so could not be used for comparison; having been received without objection they must be regarded as properly in evidence for all the purposes of the case.

As to whether where it clearly appears either by the avowal of the party offering them or otherwise that the instruments were put in evidence simply for the purpose of comparison, the failure to object precludes the other party from subsequently resisting their use for that purpose, *quære.*

*People* v. *Spooner* (1 Den., 343); *Jackson ex dem.* v. *Phillips* (9 Cow., 94); *Phœnix F. Ins. Co.* v. *Philips* (13 Wend., 81), so far as in conflict overruled.

(Argued November 19, 1878; decided November 26, 1878.)

APPEAL from judgment of the General Term of the

Supreme Court, in the fourth judicial department, affirming a judgment in favor of defendants, entered upon the report of a referee. (Reported below, 10 Hun, 372.)

This action was brought upon a promissory note claimed to have been made and delivered by defendants' testator to the plaintiff.

The plaintiff alleged in his complaint that the note was in fact made by the testator that it might be used as an off-set to a note which he at the same time executed to the testator and at his earnest solicitation, for an amount which he did not justly owe, but which the testator desired in order to satisfy his wife and her father, and which the testator did not intend should be paid by the plaintiff, but that said note had after the death of the testator been transferred for a valuable consideration, before maturity, so that the plaintiff was liable thereon to the *bona fide* holder. The defense was forgery of the note in suit.

The note given by the plaintiff to the deceased was given in evidence on the trial without objection, the body of it including the name of the deceased as payee was proved to be in his handwriting. The will of the testator was also put in evidence by the defendants, and was received without objection. Defendants then called certain witnesses who after testifying to their qualifications to speak as experts in handwriting, were asked to look at the name of the deceased appearing in the body of the note executed by plaintiff and at the signature to the will, and were then asked to give their opinion, assuming them to be genuine signatures, as to whether the signature to the note in suit was genuine. This was objected to upon the ground that such a comparison of hands could not be made by experts. The objection was overruled and exception taken. The witnesses answered substantially, that in their opinion the signature was not genuine; that it was not written by the same person as the one who wrote the others. They were also permitted to testify under objection and exception that in their opinion the signature in question was simulated.

*Frank Hiscock*, for appellant. The court erred in receiving the note and will in evidence to enable the witnesses to institute comparisons of handwriting, they being wholly immaterial to the case. (*Van Wyck* v. *McIntosh*, 14 N. Y., 439; *Randolph* v. *Loughlin*, 48 id., 456; *Hamilton* v. *N. Y. C. R. R. Co.*, 51 id., 100–106; 5 N. Y. Wkly. Dig., 452; *People* v. *Spooner*, 1 Denio, 343; *Ellis* v. *People*, 21 How., 356; *Frank* v. *Com. Nat. Bk.*, 37 N. Y. Sup. Ct. R., 26–30; *Gilbert* v. *Simpson*, 6 Daly's N. Y. Com. Plea, 29; *Goodyear* v. *Vosburg*, 63 Barb., 154; *Strother* v. *Lucas*, 6 Peters, 763–766; *Rogers* v. *Retter*, 12 Wall., 317–320, etc.; *Hardy* v. *Norton*, 66 Barb., 527–537; *Johnson* v. *Hicks*, 1 Lans., 151–160–161–162; *Glover* v. *The Mayor*, 7 Hun, 232; *Dubois* v. *Baker*, 30 N. Y., 355; *Morey* v. *Safe Dep. Co.*, 34 Sup. Ct. R., 154, 157; *U. S.* v. *Chamberlain*, 12 Blatch., 390.) The witnesses called as experts not having been shown to be such, they should not have been allowed to testify. (*Perkins* v. *Hill*, 56 N. Y., 87; *Johnson* v. *Hicks*, 1 Lans., 159; *Boyl* v. *Colman*, 13 Barb., 42; *Roe* v. *Roe*, N. Y. Sup. Ct. R., 1–7; *Frank* v. *Com. Nat. Bk.*, 37 id., 26–31; *U. S.* v. *Chamberlain*, 12 Blatch., 390; *Johnson* v. *Hicks*, 1 Lans., 150–160; *Clayton* v. *Liebert*, 3 Brews. [Pa.] 176.) It was error to allow the witnesses with no other qualifications than they testified they had as experts, to give opinions that the signature to the note sued on was simulated (*People* v. *Spooner*, 1 Denio, 343; *Johnson* v. *Hicks*, 1 Lans., 150; *Knowing* v. *Manly*, 49 N. Y., 192–203; *Mathews* v. *Coe*, 49 id., 57; *Sheldon* v. *Sheldon*, 51 id., 354.)

*Wm. C. Ruger*, for respondents. It was competent to allow the experts to testify that in their opinion the signature to the note sent was a forgery and written in a simulated hand, although they may have had no previous knowledge of the handwriting of the maker. (*Miles* v. *Loomis*, 10 Hun, 374; *Tr. A. Sidney*, 9 Howell St. Tr., 818, 854; *Garrels* v. *Alexander*, 4 Esp., 37; *Eagleton* v. *Kingston*, 8 Ves., 473; *Berr* v. *Harper*, Holt's N. P., 421; *Johnson* v. *Thorne*, 19 Johns.,

134; *Titford* v. *Knott*, 2 Johns. Cas., 211; *Hammond* v. *Varian*, 54 N. Y., 398; *Jackson* v. *Van Deusen*, 5 Johns., 114; *Doe* v. *Suckermore*, 5 A. & E., opinion Patterson, J.; *Allerbrook* v. *Roach*, 1 Esp., 351; *Griffiths* v. *Williams*, 1 Compton & Jervis, 47; *Doe ex dem. Perry* v. *Newton*, 5 A. & E., 514; *Griffiths* v. *Ivery*, 11 Ad. & Ell., 322; *Hughes* v. *Rogers*, 8 Meeson & Welsby, 123; *Van Wyck* v. *McIntosh*, 14 N. Y., 439; *Folkes* v. *Chadd*, 3 Doug., 157; *Revett* v. *Braham*, 4 Term Rep., 496; *Rex* v. *Cator*, 4 Esp., 120; *Reg* v. *Williams*, 8 C. & P., 431; *Cooper* v. *Bockett*, 4 Moor's Privy Counc. Cases, 433; *Doe* v. *Thomas*, 14 East, 327; *Roe* v. *Rawlings*, 7 id., 282n; *Mudd* v. *Suckermore*, 5 Ad. & Ell., 703; *Lyon* v. *Lyman*, 9 Conn., 55; *Hammond's Case*, 2 Greenl., 33; *Withie* v. *Rowe*, 45 Me., 571; *Moody* v. *Rowell*, 17 Pick., 490; *Commonwealth* v. *Webster*, 5 Cush., 295; *State* v. *Hastings*, 53 N. H., 453; *State* v. *Ward*, 39 Vt., 226; *Hicks* v. *Persons*, 19 Ohio, 426; *Dimenitt* v. *Randall*, 116 Mass., 337; *Morse* v. *U. S.*, 1 Otto, 274; *U. S.* v. *Chamberlain*, 12 Blatchf., 310; *Fulton* v. *Hood*, 34 Penn. St., 370; 116 Mass., 237; *People* v. *Hewitt*, 21 Parker Cr. Cas., 20; *Rogers* v. *Shaler*, Auth. N. P., 149; *Phœn. F. Ins. Co.* v. *Philip*, 13 Wend., 81; *Jackson* v. *Phillips*, 9 Cow., 112; *Ellis* v. *People*, 21 How., 358; *Knoeving* v. *Manly*, 49 N. Y., 203; *Doe* v. *Newton*, 5 A. & E., 514; *Dubois* v. *Baker*, 30 N. Y., 355; *Randollp* v. *Hicks*, 1 Lans., 160; *Goodyear* v. *Vosburgh*, 63 Barb., 154; *Lansing* v. *Russell*, 3 Barb., Ch., 336; *Roe* v. *Roe*, 40 Sup. Ct. [J. & S.], 1.)

Hand, J. I think the two documents put in by the defendants without objection on the part of the plaintiff must be regarded as properly in evidence for all the purposes of the case. It need not be held, where it clearly appears either by the avowal of the party offering them or otherwise, that instruments are put in solely for the purpose of being submitted to the jury or referee for comparison with a disputed signature or subjected to the examination of expert

witnesses for such comparison, that the failure to object when they are offered absolutely precludes the party from subsequently resisting their use for that purpose. Here the note of the plaintiff and the will of the testator were regarded by the defendants and offered, for aught that appears, as proper pieces of evidence in the cause for other purposes than comparison. They may have been mistaken in this, but we have not the evidence given on the trial before us and cannot certainly so decide ; and if they were mistaken, the plaintiff should have raised the objection to their admission when offered. He cannot say that he did not object to them when offered although knowing them to be irrelevant or inadmissible, because he supposed they could do him no harm, but now upon finding them, when in as evidence, capable of injury, asks the appellate court to review the propriety of their admission, although not objected to, and reverse the judgment, if they conclude that an objection to such admission, if taken, would have been well founded. The note seems to us to have been competent evidence in the cause and the will hardly so, but these are questions which the appellant has no right upon this record to call upon us to decide.

Treating therefore these two signatures of the testator as properly in evidence, the question is whether experts in handwriting could be permitted, upon comparison in court of these signatures with that of the note in suit, without any other knowledge of the testator's writing, to express an opinion as to the genuineness of the latter and as to whether it appeared a natural or simulated hand.

The statement of the learned counsel for the appellant that precisely this kind of evidence has never yet been held proper by the court of last resort in this State is, we believe, accurate, although it comes in *principle* within the decision in *Dubois* v. *Baker* (30 N. Y., 355, 361). Indeed, I think it must be conceded that the earlier cases adjudged in our courts lean pretty decidedly against the admissibility of such evidence. In this respect we were formerly more

strict than any of the other States. (*People* v. *Spooner*, 1 Den., 343; *Jackson ex dem.* v. *Phillips*, 9 Cow., 112; *Phœnix F. Ins. Co.* v. *Philip*, 13 Wend., 81.) Our courts followed of course the common law which was supposed to differ from the practice of the civil and ecclesiastical courts. The *nisi prius* decisions in the English courts, although not in entire harmony (*Allesbrook* v. *Roach*, 1 Esp., 351) and much criticised by the text writers, were generally hostile to the admission of comparison by experts until by the act of parliament in 1854 such evidence was declared legitimate. (*Stranger* v. *Searle*, 1 Esp., 14; *Clermont* v. *Tullidge*, 4 Car. & P., 1; *Rex* v. *Cator*, 4 Esp., 117.) Even, however, before the passage of that act a jury was allowed, itself, to institute the comparison, but only with documents in evidence before them and relevant to the issue. (*Doe dem. Perry* v. *Newton*, 5 Ad. & Ell., 514; *Solita* v. *Yarron*, 1 Moo. & Rob., 133; *Griffiths* v. *Williams*, 1 Cro. & Jer., 47; *Bromage* v. *Rice*, 7 C. & P., 547.)

In *Doe* v. *Suckermore*, decided in 1836, the whole subject received very great consideration, four judges of the King's bench delivering elaborate opinions, reviewing the cases very fully and discussing very thoroughly the principles upon which evidence of this character should be received or excluded. The rule seemed to be conceded in that case by all the judges that, as to any but ancient writings, an opinion formed upon a mere comparison of hands at the trial, *eo instanti*, was not admissible, but they were equally divided upon the question whether a knowledge of the handwriting might be obtained by a skilled person sufficient to render him a witness competent to speak as to the genuineness of the signature, merely by a previous examination of other signatures proved to be genuine. (Lord Denman, Ch. J., 5 Ad. & Ell., 737; Williams, J., id., 718.) This distinction is admitted to be subtle, but seems to have prevented the concurrence of these two judges with Coleridge and Patterson, JJ., in refusing the rule for a new trial. It is to be observed that the decisions to which I have referred

were as to evidence of experts that a signature was or was not that of the party whose it purported to be. Upon the question whether a signature, upon its bare inspection alone, appeared to be simulated and not natural, persons professing the skill to speak have been more often admitted, although this species of evidence has been declared not entitled to any credit. (L'd. DENMAN, 5 Ad. & Ell., *supra.*)

In our own State, the Legislature has not interfered as in England, but the courts have in their later decisions shown a disposition to relax the rule. It has been conceded here that while documents could not be put in evidence for the purpose of comparison, yet as in the English courts, those, which were in for other purposes, might be compared with the disputed signature by the jury. (*T. A. Johnson, J. Van Wyck* v. *McIntosh*, 4 Kern., 439; *Leonard, Com. Randolph* v. *Loughlin*, 48 N. Y.; 456); and in *Dubois* v. *Baker* (30 N. Y., 355, 361), the majority of the judges held evidence admissible which cannot in principle be distinguished from that admitted in the present case. DAVIES, J. indeed, in delivering the opinion expressly says "a comparison of the handwriting of papers introduced and relevant is permitted to ascertain the genuineness of the one in controversy" and MULLIN, J. though dissenting on other grounds concurred in this (30 N. Y., 366).

Although this decision lays down, as has been already intimated, a somewhat more liberal rule as to evidence of handwriting than had previously prevailed in this State, yet it has been generally acquiesced in, is in conformity with the law in other States, and seems to have become an established practice in the trial courts. (See *Goodyear* v. *Vosburgh*, 63 Barb., 154; *Johnson* v. *Hicks*, 1 Laus., 160; *Roe* v. *Roe*, 40 Superior Court [8 J. & S.], 1.)

We are very strongly of the opinion that it is sounder in principle than the more narrow one and in no respect an infringement upon any wholesome and just limitation of expert testimony.

Evidence of handwriting, it is universally conceded, may

be opinion merely.   It is as universally conceded that a wit-
ness who has either ever seen the party write or who, not
having seen him write, has received letters from him which
have been " acted upon " by him as genuine, is competent to
give an opinion as to his handwriting.   And this competency
is not affected by the lack of frequency of observation, the
length of time which has elapsed since the writing was seen,
or the slightness of the correspondence, although the weight
of the opinion will of course depend much upon these cir-
cumstances.

From what in these cases is the opinion derived, if not
from a mental comparison of hands ?   The signature is pre-
sented to the witness and his only means of forming an
opinion upon it is by recalling with more or less distinctness
to his mind images of the signatures he has either seen made
or attached to letters received, and comparing them with the
one presented for his opinion.   This is certainly a " com-
parison of hands " and in my judgment no favorable dis-
tinction as to accuracy or safety can be made between such
a mental process and that of the expert who has become
quick by practice in detecting identity of hands, and also
compares in his mind and with his eye the one in question
with other signatures as certainly genuine as those which the
ordinary witness has seen written or received in letters.
The comparative weight of the two kinds of evidence is not
the question under consideration.   The opinion of the ordi-
nary witness, founded only upon a mental comparison of the
disputed writing with a single signature seen by him twenty
years before, would be worth little, but it would undoubtedly
be competent.   (*Jackson ex dem.* v. *Van Dusen*, 5 Johns.,
144; *Eagleton* v. *Kingston*, 8 Ves., 473.)   So the opinion of
an expert founded upon a comparison with but one or two
genuine signatures should not perhaps be regarded as of much
value, but it still has every claim, in principle, to competency
possessed by the other.   Nor does the distinction sought to
be raised by Lord Denman in *Doe* v. *Suckermore* (*supra*)
between an opinion of an expert who has previously examined

other genuine signatures put in evidence and then is called to speak as to genuineness from his knowledge of the signature thus gained, without actual comparison before the court, and one given upon an examination or comparison in court of the signatures and without any previous knowledge, seem on scrutiny to be well grounded or practicable. It would be impossible to draw a line between these processes. It is undoubtedly true that the opinion as to handwriting should depend not so much upon mathematical measurements and minute criticisms of lines nor their exact correspondence in detail, when placed in juxtaposition with other specimens, as upon its general character and features as in the recognition of the human face. But in the case of one expert, his mental image or idea of the genuine handwriting may become as clear and vivid and accurate by an examination of the other signatures on the instant as in the case of another of less practice or quickness of perception after hours or days of study. The amount of knowledge gained by this study and the length of time and frequency of opportunity to gain it affect the weight of the evidence as in the case of the ordinary witness, but cannot properly decide its competency.

The principal objections which have been raised to the comparison of hands are two : First, the introduction of numerous and distracting collateral issues as to the genuineness of the signatures to be compared. As to each one of these, it is said there might be the same controversy as with regard to the original signature, and the further introduction of the comparison of hands and so the number of issues to be decided be without end. But this objection seems tolerably met by the restriction of the signatures to be compared to those necessarily or properly proved in the case as relevant evidence for other purposes and upon the genuineness of which, if there is any controversy about them, the jury must pass in any event. This limitation, it must be conceded, is not very philosophical or logically satisfactory, but is justified by the necessity of the

case, and at all events answers the objection of collateral issues. Second. The second objection to the comparison of hands is that no man writes always the same signature and the specimens will be unfairly selected as being unlike or like the signature in dispute according to the interest of the party producing them.    They will not be fair average specimens of the general character of the handwriting.    (DALLAS, C. J., *Burr* v. *Harper*, Holt N. P. C., 44.)    That, consequently, the expert, to whom they are submitted, will have no opportunity of obtaining an accurate notion of the ordinary natural hand ; and as illustrative of this objection, the decision of Lord KENYON is cited, who refused to allow a witness to give an opinion, whose only knowledge was from the signatures he had seen the party himself write for the avowed purpose of showing his true manner of writing.    (*Stranger* v. *Searle*, 1 Esp., 14.)    The force of this objection also is, I think, done away by the restriction of the rule to signatures relevant in the cause for other purposes and as to which therefore there could hardly be any selection of the signatures for the purposes of comparison.

On the whole therefore I am inclined to concur in the soundness of the doctrine upon this point contended for in the most approved text writers upon evidence.    " It cannot be denied " says Mr. Starkie (Starkie on Evi., vol. 2, p. 375) " that abstractly a witness is more likely to form a correct judgment as to the identity of handwriting by comparing it critically and minutely with a fair and genuine specimen of the party's handwriting than he would be able to make by comparing what he sees with the faint impression made by having seen the party write but once and then perhaps under circumstances which did not awaken his attention." " When other writings " says Prof. Greenleaf (Greenl. on Evi., § 578) " admitted to be genuine are already in the case, here comparison may be made by the jury with or without the aid of experts."    (See, also, Phillips on Evi., vol. 1 [6th ed.], 472; Evans' note to Pothier on Contracts, 2 Evans' Pothier, p. 185.)

My conclusion is that there was no error in the admission of the evidence of experts before the referee.

The counsel for appellant insists here that the witnesses called by the defendants as experts were not qualified as such, but no such objection was taken upon the trial. These witnesses were, however, we think shown to be sufficiently competent to give the opinions upon handwriting. They had been engaged in occupations in which it was their duty to scrutinize handwritings and detect forgeries and had acquired more or less skill by practice.

There being no error committed upon the trial, the judgment must be affirmed, with costs.

All concur, except ANDREWS, J., absent.

Judgment affirmed.