Addington, S.
—Daniel Gould, above named, died in the town of Webster, county of Monroe, and state of New York, on the 12th day of May, 1887, at the age of seventy-six years. He had never been married, and left surviving him, as heirs and next of kin, only brothers and sisters, and the descendants of brothers and sisters deceased.
He left an instrument purporting to be his last will and testament, disposing of his estate, which is valued at about $60,000; the larger part of which was given thereby to a brother and sister-in-law for life, with remainders to their children. The said instrument bears date February 25, *785 1885, and is subscribed by Wells B. Fuller and Boswell D. Fuller, as attesting witnesses.
Objections to the probate of the will were filed, alleging the unsoUndness of testator’s mind, and also, fraud and undue influence in procuring the execution of the will.
There is almost no testimony in the case, tending to support these allegations, and therefore they may be summarily dismissed as unproved.
The efforts of the contestant, on the trial of this proceeding, were chiefly devoted to an attempt to prove that the alleged signature of the decedent to the will is a forgery.
Unless the forgery is proven, the due and formal execution of the will, the competency of the testator, and his freedom from restraint have been satisfactorily established, and the will in controversy is entitled to be admitted to probate.
The evidence relied on to sustain the charge of forgery is of two kinds, viz: expert testimony that the signature, to the will, is not the genuine handwriting of Mr. Gould; and testimony tending to show that the decedent was at another place at the time when the execution of the will is said, by the attesting witnesses, to have taken place. One expert was produced by the contestant, who pronounced the alleged signature of the decedent a forgery. On the part of the proponent six expert witnesses declare the signature genuine, and the two subscribing witnesses swear positively that they saw Daniel Gould affix this very signature to this instrument. On this branch of the subject, therefore, the weight of the testimony is greatly against the contestant’s contention. The contestant’s counsel argue that the testimony of the expert produced on their part should have much greater weight and influence than the opinions of the others who testify for the proponent; because the former went into elaborate analysis of the so-called characteristics of the decedent’s handwriting, and assumed to point out minute distinctions between the forms of the letters in the signatures in evidence, which are conceded to be genuine, and the appearance of corresponding letters in the signature to the will; while the testimony of proponent’s experts was chiefly as to the similarity in the general appearance of the genuine and disputed signatures.
It does not appear, however, that special importance has ever been attached by the courts to distinctions of this character.
In Miles v. Loomis (75 N. Y., 288-296), the court of appeals say: “ Opinion as to handwriting should depend not so much upon mathematical measurements and minute criticisms of lines, or their exact correspondence in detail *786 when placed in juxtaposition with other specimens, as upon the general character and features, as in the recognition of the human face.”
The same subject is learnedly and exhaustively discussed with like conclusion in the Taylor Will Case (10 Abb. Pr. [N. S.], 308-316). The difficulties which lie in the way of prescribing scientific rules for determining whether a signature is false or genuine, the value and importance to he attached to expert testimony on the subject and the general considerations which should control in the decision of an issue of this kind, have been so well stated and so much dwelt on in the cases above cited, and in many others, in-eluding Sarvent v. Hesdra (5 Redf., 47-60); Murphy v. Hagerman (1 Wright [Ohio], 293), and Young v. Brown (1 Haggard’s Ec. Rep.), 569-570), that I shall pass this branch of the subject with a simple reference to those authorities.
In further support of the charge of forgery, a large amount of testimony was given on behalf of the contestant,, tending to show that the decedent was not at Mr. Puller’s house at the time when it is claimed that the will was executed.
According to the testimony of proponent’s own witnesses,. Mr. Gould was at the house of Wells B. Fuller on but one occasion during the winter of 1884-5. That was in the forenoon of the day on which the execution of this instrument is asserted to have taken place, and would appear to have been either the 25th or the 26th of February, 1885.
The contestant attempted to prove by his witnesses that on the days in question Mr. Gould was at places far removed from the Fuller house, and engaged in other business than that of making a will.
Some of these witnesses testify'to seeing the decedent at one place, and some to seeing him at another on the days mentioned. Without discussing this evidence in detail, it is sufficient to say that there is very little in the testimony of these witnesses which fixed with certainty the day on which the isolated circumstances they relate occurred, and there is a like lack of certainty as to such occurrence having taken place on the days with which contestant seeks to connect them. The uncertain recollections of witnesses as to the exact day and hour on which unimportant events of three years ago occurred can scarcely be regarded as sufficient warrant for declaring reputable witnesses forgers and perjurers.
The two subscribing witnesses testify that the execution of this will actually took place at their house in Walworth, Wayne county, N. Y., at about the date mentioned in this instrútiaent.
Five other persons, who were present in the house of Mr. *787 Fuller, swear positively that Daniel Gould was also there in the forenoon of the only day on which they were ever all together in that place. They also say that Gould was engaged for some time in the transaction of private business, in which the two Fullers had some part The time of this occurrence is fixed with reasonable certainty in the last week of February, 1885, from its relation to another important event, viz: The death and funeral of a near relative of some of the number and an acquaintance of all.
Here, therefore, are seven apparently honest, intelligent and truthful persons, of good character, swearing unqualifiedly that a certain material thing is true; to which is opposed only the occurrence of certain isolated and disconnected events, some of which are vouched for by a single witness only, others by two, and none by more than four; which events can be in no wise material on this issue, unless they happened at the very time when the other occurrence is said by the seven witnesses to have taken place. That any of these alleged occurrences were synchronous with the execution of this will, I am far from being convinced, and even if such were conclusively shown to be the case, I should still be bound to believe seven respectable witnesses who swear that Gould was at Fuller’s house at' the time stated, rather than to give credence to a much smaller number of persons asserting the contrary.
No motive has been suggested for the commission of the serious crimes of forgery and perjury, which are imputed to these people, the offense has not been proved and is not believed by me to have been perpetrated.
The slight mistakes which occur in the body of the will are easily accounted for, and seem to require no special comment. There should be a decree admitting this will to probate, and one may be entered on five days’ notice.