## HADCOCK *v.* O'ROURKE.

*(Superior Court of Buffalo, General Term.   July 12, 1889.)*

1. TRIAL—RECEPTION OF EVIDENCE—ORDER OF PROOF.
    In an action on a note, plaintiff offered to show that about the time it was given he had a large sum of money in his possession.   The evidence being objected to, plaintiff stated that it was claimed that he had no money at the time the advance sued for was made, intimating that he anticipated proof by defendant of circumstances tending to prove that fact.   The court admitted the evidence *de bene esse*, stating that, unless it afterwards appeared material, it would be stricken out on motion.   *Held*, that the ruling was as to the order of proof, and was proper.
2. EVIDENCE—PROOF OF HANDWRITING.
    Defendant called two expert witnesses, who testified that they examined the note under a microscope, and found superadditions and retouchings to portions of words and letters in the note and signature, and that the signature was a forgery. Plaintiff then called two expert microscopists, who testified in detail as to the appearance of the note, and its various letters and lines.   Defendant objected to the evidence as incompetent, in not stating whether the signature was genuine or not. *Held*, that the evidence bore on the question as to whether the note had been changed after it was written, and was therefore competent.
3. SAME—OPINION EVIDENCE.
    Where the appearance of the letter "R" in the note was a reason assigned for the conclusion that it was a forgery, a witness may testify in detail as to the appearance of a loop in the letter, how far the ink-mark ran, and where the paper ap-

peared to have been dug out; that there was no evidence of a superadded line at that point; and that there was nothing in the appearance of the paper on which to base an opinion that the loop was there when the letter was originally written

**4. SAME—EXPERTS—COMPARISON OF WRITINGS.**

Where a witness testified that he was an expert accountant, and had been a bookkeeper and teller in a bank; that he had made handwriting and signatures a scientific study; had often been called as an expert witness, but had never seen defendant write,—it is not error, under Laws N. Y. 1880, c. 36, providing for the comparison of disputed writing, to permit him to compare genuine signatures of defendant, admitted in evidence for that purpose, with the note in issue, and give his opinion thereon.

**5. SAME.**

There is no distinction between expert witnesses who have seen the person write whose signature is in dispute, and those who have not; and the latter are not confined to statements of the characteristics of several writings only, their resemblance or dissimilarity, but may state whether, in their opinion, the signature is genuine or not.

Appeal from trial term.

Action by John I. Hadcock against William F. O'Rourke, upon a promissory note. Verdict for plaintiff. From a judgment entered thereon defendant appeals.

Argued before BECKWITH, C. J., and TITUS and HATCH, JJ.

*James M. Humphrey,* for appellant.    *George T. Quinby,* for respondent.

HATCH, J.    No motion for a new trial having been made, this appeal only presents questions of law arising upon exceptions taken on the trial. *Railroad Co.* v. *Ebling,* 100 N. Y. 98, 2 N. E. Rep. 878; *Boos* v. *Insurance Co.,* 64 N. Y. 236. The action is brought upon an instrument for the payment of money. The sole issue was that of execution of the instrument by the defendant. Upon that question conflicting evidence was given. The questions presented for our determination relate alone to the ruling of the trial court upon the admissibility of evidence. The first of these questions arises in the testimony of one Barr, the first witness in the case, who was called primarily to testify as to the genuineness of defendant's signature. Having answered in respect to that subject, he was asked: "Do you recollect an occasion of his [plaintiff's] coming into the office, when you noticed a roll of bills he had?" Defendant's counsel asked, "How is that material?" to which plaintiff's counsel replied: "It is claimed he had no money at that time. I offer to show by Mr. Barr, in 1870 or 1871, Mr. Hadcock came into his office, and he had a roll of bills, and Mr. Barr counted it." Defendant's counsel then objected, upon the ground that the evidence was immaterial. The court said: "I will take it *de bene esse,* and if it is objected to I can rule it out." Defendant thereupon excepted. The witness was then directed to "tell the jury about that, where it was, how it occurred, and what you did." Defendant again objected "to any conversation between him and Mr. Hadcock, as not being competent." The court overruled the objection, and defendant excepted. The witness then testified that about June or July, 1871, the plaintiff came to the office of A. A. Bissell & Co.; that he took a roll of money from his pocket, and asked witness to count it, which he did; and that the sum was nearly $800. It is thus seen that at the time when the evidence was offered it was not relevant to any fact appearing in the case, and no error would have been committed, if the court had excluded it. The statement of plaintiff's counsel indicated to the court that he anticipated proof of circumstances by defendant tending to establish that at this time, when plaintiff claimed to have advanced the money mentioned in the instrument sued upon, he in fact had no money, and it is clear from the remark of the court that the evidence must appear material, or it would at a subsequent stage rule it out upon motion or objection. The ruling, therefore, related to the order of proof, to which there was no objection, rather than to the materiality of the

testimony. It was thus at this time a discretionary question, and no error was committed in receiving it. *McCarney* v. *People*, 83 N. Y. 408-414. The objection raised alone the question of materiality, for the second objection of incompetency was directed at any declaration which plaintiff made. The witness testified to none at all relating to the case, so error is not found for that reason. The testimony did become material, as defendant testified and produced letters of plaintiff tending to establish that, at or about the time stated by the witness, plaintiff was quite largely in his debt; that he was then, asking defendant for more money, and was unable to meet obligations then due, which defendant held; and that he had no money with which to purchase needed property for the prosecution of his business. If, however, it be assumed that the evidence was wholly immaterial, and no connection with the transaction at issue established, yet the attention of the court was not subsequently called to it, and, as no motion was made to strike it out, no question is therefore raised. *Baylis* v. *Cockcroft*, 81 N. Y. 363.

Plaintiff also called as witnesses two expert microscopists, who were examined in detail as to the appearance of the note, and to its various letters and lines. Defendant objected to the testimony, upon the ground that the witnesses were asked to describe the appearance of the letters and lines of the note, and the paper upon which it was written, and not whether the signature was genuine or simulated; that the evidence was not competent, as bearing upon the questions of its genuineness. Objection was overruled, and an exception taken. Defendant had previously called two expert witnesses, who testified that they had examined the note under the microscope, and discovered certain superadditions and retouchings to portions of words and letters in the note and signature, and from such examination and other reasons testified that the signature of the defendant was a forgery. The testimony objected to bore directly upon the question as to whether the note and signature had been changed or tampered with after it was written, and tended to establish that it had not. To this extent it was a contradiction of the testimony of defendant's witnesses, and as such contradicted statements furnished, at least in part, the basis for the opinion that the signature was a forgery. It tended to weaken and nullify their conclusion, and was therefore competent, as bearing upon the genuineness of the signature.

One of these witnesses for plaintiff was asked, with reference to a loop of the letter "R" in the note, "If there is anything in the appearance of this paper upon which you could safely base an opinion that there was a loop there when the letter was originally written?" Defendant objected that it was not a proper matter upon which to express an opinion; that witness must be limited to a statement of facts. The court overruled the objection, defendant excepted, and the witness answered: "I can't say there was." Previous to this the witness had been examined in detail as to the appearance of this particular letter, how far the ink-mark ran, and where the paper appeared to have been dug out; that he saw no evidence of a superadded line at that point. This was all before the jury, and was one of the reasons assigned by defendant's experts for their conclusion that the note was a forgery. In such view it was competent for this witness to state whether there was anything there which could furnish the basis for such opinion. The suggestions heretofore made also answer this point. Exception was also taken to the testimony of Brooks, called by plaintiff as an expert. He testified that he was an expert accountant; had been a book-keeper and teller in a bank; that he had made handwriting and signatures a scientific study; and had been called as an expert witness many times. Had never seen defendant write. He was permitted to testify, from a comparison of genuine signatures of defendant, admitted in evidence for that purpose, and the note, that in his opinion, from such comparison, the signature to the note was the genuine signature of the defendant. We find no error here. The law now authorizes such a com-

parison to be made. Chapter 36, Laws 1880. *Peck* v. *Callaghan*, 95 N. Y. 73.

Distinction is sought to be made between expert witnesses, that those who have never seen the defendant write are limited in their statements to the characteristics of the several writings, their resemblance or dissimilarity, and should not be permitted to state whether the disputed signature was genuine or not. We find no such distinction recognized. On every question arising which involves a point in science or art, which includes handwriting, persons specially skilled therein become competent to express an opinion, and such opinion is deemed a relevant fact. Such persons are denominated "expert witnesses," and it is for the court to determine whether the skill of the person offered is sufficient to be deemed an expert, and such determination is the subject of review. Reyn. Steph. Ev. 77, 78. In the present case no question is raised but that the witness qualified as an expert. In *Sudlow* v. *Warshing*, 108 N. Y. 520, 15 N. E. Rep. 532, the question asked of the expert was, "What evidence, if any, do you find in the signatures to the disputed deed of their being simulated imitations, instead of genuine signatures?" and witness answered, "None whatever;" and the court held it competent. A similar question to the one here was passed upon in *Miles* v. *Loomis*, 75 N. Y. 288; and the court reached the conclusion that such opinion from an expert was competent, although the law did not at that time permit the introduction of writings for the purpose of comparison. Many cases might be referred to where this question has arisen, but the ruling in the cases cited cover all the points made here, and show that no error was committed upon the trial. The judgment must therefore be affirmed, with costs. All concur.