privilege of the respondent's predecessor was destroyed in 1897 by vote of the electors of the town. It was not revived in favor of the respondent more than two years thereafter by the vote of the electors permitting traffic in liquor in the town. There had been a discontinuance of the traffic in the premises for more than two years, and it was the respondent's duty to file with her application the consents required by the statute. The prayer of the petitioner for the revocation and cancellation of the certificate issued to the respondent should be granted.

Application granted.

--------

(30 Misc. Rep. 187.)

In re ALBINGER'S WILL.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

WILLS—FORGERY—EVIDENCE.

The body of a will purporting to dispose of one-half of decedent's estate only was written by proponent and beneficiary, who was appointed executor in a clause written at the bottom of the will, and after its date. Decedent's alleged signature appeared labored, and lacked the clean-cut appearance of his genuine signatures; several of the letters showed erasure, another had been re-enforced; and the signatures of the subscribing witnesses appeared to have been traced. Proponent testified that the will was made for money advanced to decedent, but could not explain how the money was obtained. Two of proponent's relatives and the alleged subscribing witnesses to the execution of the instrument positively identified it, swore to its execution, and declared that the clause appointing proponent executor, and which it was apparent had been written after the date of the will, so as to avoid decedent's alleged signature, was written before he signed the will. *Held*, that the instrument was a forgery.

Appeal from surrogate's court, Westchester county.

Application by Nicholas Lauer for the probate of an instrument alleged to be the will of Joseph Albinger, deceased. Denied, and petitioner appeals. Affirmed.

The following is the opinion of the court below (SILKMAN, S.):

The paper propounded is dated the 18th day of June, 1897. It is written upon one side of a portion of a full-sized letter sheet, the top evidently having been cut off with a knife or sharp instrument. With the exception of the alleged signature of the testator and the alleged signatures of the witnesses and their addresses, it is concededly written by Nicholas Lauer, the proponent and only beneficiary. The disposing part of the will is in three lines and a half in the following words: "And hereby give. and bequeath unto Mr. Nicholas Lauer, of Greece, Monroe county, N. Y., one-half (½) of all my possessions in America, cash and real estate." After the date of the instrument, which is at the beginning as well as at the end, these words appear: "Also do I appoint Mr. Nicholas Lauer my executor." The only issue is as to whether Joseph Albinger, the alleged testator, signed and executed the instrument offered for probate. The disposition of the question depends to some extent upon the expert testimony as to the handwriting. I am well aware of the judicial criticisms that have been heaped upon expert witnesses, and the little weight that is generally given to such testimony. With the views expressed by judicial writers I do not disagree. There are, however, cases which are exceptional, where the testimony of the experts goes to support inferences drawn from surrounding facts, and supports the impressions of the lay mind as to the genuineness of the writing involved. The case in hand I think is one. I have examined the many genuine signatures of Father Albinger, put in evidence as standards, and find that, while they vary greatly, still there is a characteristic ap-

pearance about them that is unmistakable. There is a dash and swing about the stroke which evidences a quick and confident penman; while, on the other hand, in the signature to the will, although it simulates the standards, the strokes appear to be labored, and lacking the clean-cut appearance of the true signatures. I understand the rule to be that an opinion as to handwriting should depend not so much upon mathematical measurements and minute criticisms of lines, nor their exact correspondence in detail when placed in juxtaposition with other specimens, as upon its general character and features as in the recognition of the human face. Miles v. Loomis, 75 N. Y. 288. Viewing the signature of Father Albinger in this light, I am of the opinion that the name "Jos. Albinger," purporting to be a signature to the alleged will, is not genuine. This conclusion, however, is not based solely upon an individual opinion, but only as it is supported by the expert testimony and the surrounding facts and circumstances. The instrument purports to dispose of only one-half of the testator's property, and that provision is for the benefit of the beneficiary. Under the letters "Al" in the alleged signature there is clearly an erasure, and an apparent re-enforcing of part of the letter "b." The expert Carvalho declared unhesitatingly that the signature is a forgery, and was written by the same person who wrote the body of the instrument. Mr. Carvalho is an expert of wide experience, but in this case he was employed solely by the contestant. His evidence, however, is supported by that of the expert Kinsley, who was called as a witness on the part of the contestant, but who had been first employed as an expert on the part of the proponent, and upon such latter employment had pronounced the signature a forgery. Against this testimony we have but one expert on the part of the proponent, the witness Elliott, but whose experience is not equal to that of either of the experts called by the contestant. To this testimony we have added the strange tale of the proponent as to his advancing and loaning moneys to Father Albinger; and, when examined as to the sources from which the money was obtained, and the manner in which the money was paid, we have such a maze of contradictions and incredible explanations and forgetfulness that a conclusion against the honesty of the proponent is inevitable. We also have the evidence of the letter of the proponent to Maggie Tischler, and the conversation with the witness Kaiser, which is hardly to be reconciled with knowledge of the existence of a will at the time the letter was written and the conversation had. It is alleged that at the time of the execution of this will a note of $5,000 was executed by Father Albinger to the proponent, no mention of which is made in the will executed at the same time; and when the proponent is examined in regard to the moneys which were the consideration for the note his testimony is so indefinite and contradictory that it is impossible to give any credence whatever to his statements. At the end of the case, and after the case has been substantially closed, proponent attempts to support his testimony in regard to the loans to Father Albinger by entries in memoranda books which were not offered in evidence. They, however, are of such a character as to invite the suspicion that the entries were supplied for the occasion. It is urged on the part of the proponent that the many circumstances which challenge the genuineness of the instrument offered are more than offset by the positive testimony of the witnesses to the instrument. The witnesses Henry Wingarter and Katie Wingarter, who are the brother-in-law and sister-in-law of the proponent, give positive and uncontradicted testimony as to the execution of the instrument, identify it, and testify positively that the words, "Also do I appoint Mr. Nicholas Lauer my executor," were written before the signature of Father Albinger. I am not disposed to say whether these witnesses are honest, or whether their testimony has been manufactured. Of one thing I am certain, that the words, "Also do I appoint Mr. Nicholas Lauer my executor," were never written before the signature "Jos. Albinger." This sentence is so clearly written in after the date of the will, in such a manner as to carefully avoid the alleged signature, that it would take more than the testimony of these two relatives of the proponent to satisfy me as to their recollection in reference to the writing of the sentence. It may be—and the explanation is not improbable—that Father Albinger did, on the 18th of June, 1897, at the St. Denis Hotel, in the presence of Henry Wingarter and Katie Wingarter, execute a will, but that the paper executed is not the document which is now

offered for probate. The evidence of the experts is that the names of the witnesses and their addresses are written over erasures of some character, apparently of pencil marks, and this is plainly evident to the naked eye. The experts also testify to the discovery of pencil marks under the signatures of the subscribing witnesses, leading to the conclusion that their signatures had been traced. I repeat that in coming to the conclusion that the will is a forgery it does not necessarily follow that the witnesses are perjurers, but that they may be honestly mistaken. Their signatures upon the paper propounded may have been reproduced from a genuine document, which has not come to light. There is testimony in regard to the character of the ink used at the hotel where the paper is alleged to have been executed, and it is shown by the testimony of the experts, and the experiments had in open court by the experts of both sides, that the ink used in writing the instrument propounded is not the same as that generally in the hotel, where it was alleged to have been drawn. To this testimony I attach little weight, for the reason that I do not think that it has been sufficiently shown that no other inks than Arnold's Writing Fluid were in use in the writing room of the St. Denis Hotel. I have not thought it necessary to go into the detail of the testimony, but briefly state my reasons for arriving at the conclusion that the instrument propounded for probate is a forgery. A decree may be entered denying probate. Probate denied.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

C. H. & J. A. Young & Terry, for appellant.
Richard M. Bruno, for respondent.

PER CURIAM. Decree affirmed, with costs, on the opinion of the surrogate of Westchester county.

---

ROUTENBERG v. SCHWEITZER.

(Supreme Court, Appellate Division, First Department. April 2, 1900.)

CONSTITUTIONAL LAW—LEGISLATIVE POWER—JURISDICTION—RESIDENT—MUNIC
IPAL COURT OF NEW YORK CITY.

     Const. art. 6, § 18, provided that the legislature should not confer on any inferior or local court of its creation any greater jurisdiction than was conferred on county courts. Section 14 gave county courts jurisdiction in actions for the recovery of money only when defendant resided in the county. Greater New York Charter, § 1370 (Laws 1897, p. 489), declared that no person who should have a place in such city for the regular transaction of business should be deemed a nonresident, under the provisions of the title which conferred jurisdiction on the municipal court of the city of New York. *Held*, that the constitutional provision restricted the jurisdiction of such municipal court to defendants who were dwellers within the jurisdiction, and the legislature could not expand such jurisdiction by giving a definition to the word "resident" at variance with such restriction.

Appeal from appellate term.

Action by Louis Routenberg against Morris Schweitzer to recover money. From an order of the appellate term (61 N. Y. Supp. 84) reversing a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Henry A. Rubino, for appellant.
Abraham S. Weltfisch, for respondent.